**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EYOBE AMBERBER, individually and on behalf of all others similarly situated,<br><br>                       Plaintiff,<br><br>        v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG XU,<br><br>                       Defendants. | Case No. 1:21-cv-01392-GBD<br><br><u>CLASS ACTION</u> |
| VIVIAN CHAUMONT, Individually and on Behalf of All Others Similarly Situated,<br><br>                       Plaintiff,<br><br>        v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG XU,<br><br>                       Defendants. | Case No. 1:21-cv-01526-GBD<br><br><u>CLASS ACTION</u> |

**TIMO RAUTANEN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION FOR (1) CONSOLIDATION; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ........................................................................................................................ 7

I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..................... 7

II.     RAUTANEN IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE
        CLASS ........................................................................................................................ 8

        A.      The PSLRA Standard For Appointing Lead Plaintiff ................................................ 8

        B.      Under the PSLRA, Rautanen Should be Appointed Lead Plaintiff .......................... 9

                1.      Rautanen Filed a Timely Motion ................................................................. 9

                2.      Rautanen Has the Largest Financial Interest in the Relief Sought by the
                        Class ........................................................................................................ 10

                3.      Rautanen Meets Rule 23's Typicality and Adequacy Requirements ........ 11

III.    RAUTANEN'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
        SHOULD BE APPROVED ......................................................................................... 13

CONCLUSION .................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ...............................................................................9, 10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...............................................................................7, 11, 13

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ..........................................................................................8

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...............................................................................9, 10, 11

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951 (DC),
   2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...........................................................8, 10, 11, 12

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) .........................................................................................2

*Hom v. Vale, S.A.*,
   No. 1:15-cv-9539-GHW, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016).....................................2

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) .......................................................................................7, 8

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011)....................12, 13

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)...................................................................................9

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993).................................................................................................7

*In re Millennial Media, Inc. Sec. Litig.*,
   87 F. Supp. 3d 563 (S.D.N.Y. 2015).....................................................................................10

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .....................................................................................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .........................................................................................12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
   No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010)......................11

*Quan v. Advanced Battery Techs., Inc.*,
No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ....................................12

*Reitan v. China Mobile Games & Entm't Grp.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)....................................................................................13

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................................10, 11

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ......................................................................................7, 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
780 F.3d 597 (4th Cir. 2015) ............................................................................................14

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a)(4)........................................................................................................12

Fed. R. Civ. P. 42(a) ........................................................................................................2 ,7

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
Law360 (July 16, 2020) ......................................................................................................16

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
Bloomberg Law (July 30, 2020) ...........................................................................................16

Timo Rautanen ("Rautanen") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of his motion for the entry of an order: (1) consolidating the above-captioned actions ("Actions");[1] (2) appointing Rautanen as Lead Plaintiff; and (3) approving Rautanen's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of those who purchased or otherwise acquired EHang Holdings Limited ("EHang") securities between December 12, 2019 and February 16, 2021, both dates inclusive (the "Class Period"), which

---

[1]     The following two Actions are pending before this Court: (1) *Amberber v. EHang Holdings Limited, et al.*, No. 1:21-cv-01392-GBD ("*Amberber*"), which was filed on February 17, 2021; and (2) *Chaumont v. Ehang Holdings Limited, et al.*, No. 1:21-cv-01526-GBD ("*Chaumont*"), which was filed on February 19, 2021. The *Amberber* Action is brought "on behalf of all investors who purchased or otherwise acquired Ehang Holdings Limited . . . American depositary shares . . . between December 12, 2019 and February 16, 2021 (and on February 16, 2021, only for those who purchased shares at or above the price of $112.00), inclusive . . . . for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934[.]" *Amberber*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Amberber* Compl."). The *Chaumont* Action is brought "on behalf of persons and entities that purchased or otherwise acquired EHang American Depositary Shares . . . between December 12, 2019 and February 16, 2021, inclusive . . . . pursu[ing] claims against the Defendants under the Securities Exchange Act of 1934[.]" *Chaumont*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Chaumont* Compl."). Additionally, *Klein v. EHang Holdings Limited, et al.*, No. 2:21-cv-01811-JFM_PVC ("*Klein*"), which was filed on February 26, 2021, is pending in the Central District of California. The *Klein* Action is brought "on behalf of all investors who purchased or otherwise acquired EHang Holdings Limited . . . securities between December 12, 2019 and February 16, 2021, inclusive . . . . for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934[.]" *Klein*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Klein* Compl.").

[2]     Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

1

seeks to recover damages caused by defendants' violations of the Exchange Act.[3]

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii).  Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2).  The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder.  The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $247,555.55, Rautanen, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Rautanen also satisfies Rule 23's typicality and adequacy requirements. Rautanen's claims are typical of the Class's claims because he suffered losses on his EHang investment as a result of the defendants' false and misleading statements.

---

[3]     For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]"  *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Hom v. Vale, S.A.*, No. 1:15-cv-9539-GHW, 2016 WL 880201, at *3-4 (S.D.N.Y. Mar. 7, 2016) (finding use of longer class period, which began more than two years prior to the shorter class period, proper for lead plaintiff appointment purposes, and collecting cases).  Accordingly, the class period in the *Klein* complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

Further, Rautanen has no conflict with the Class and will adequately protect the Class's interests given his significant stake in the litigation and his conduct to date in prosecuting the litigation, including his submission of the requisite certification and selection of experienced class counsel. Accordingly, Rautanen is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Rautanen is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Rautanen has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Rautanen's motion should be granted in his entirety.

## FACTUAL BACKGROUND[4]

EHang was incorporated in December 2014 in the Cayman Islands as an offshore holding company to facilitate offshore financing and listing. In the same month, Ehfly was established in Hong Kong, which subsequently became EHang's wholly-owned subsidiary. In October 2015, Ehfly established a wholly-owned subsidiary in China, EHang Intelligent, which purported to be engaged in the research, development, manufacture, and sale of autonomous aerial vehicles ("AAVs"), and the research and development of software, communication technology and autonomous control technology related to air mobility and intelligent aviation.

On December 12, 2019, EHang's American depositary shares began trading on the NASDAQ exchange. Throughout the class period, EHang issued numerous press releases

---

[4]    This information comes from the *Amberber* complaint, but the *Chaumont* and *Klein* complaints contain substantially similar information.

announcing flight approvals with government agencies, various agreements, and SEC filings touting the achievements and milestones made by the company, both technologically and financially.

On January 8, 2020, EHang released a press release disclosing that for the first time, the EHang 216 had received flight approval from the Federal Aviation Administration. On January 23, 2020, EHang issued a press release announcing that it had "signed a strategic cooperation agreement with Yunyan District of Guiyang, following the 'Urban Air Mobility' pilot city cooperation with Guangzhou in August 2019." On March 5, 2020, EHang announced that it had obtained operational permit for its two-seater passenger grade AAV from the Civil Aviation Authority of Norway, laying the groundwork to get approval in other EU countries. On March 16, 2020, EHang announced it had entered into a cooperation agreement with the city government of Seville, Spain to execute the first Urban Air Mobility pilot program in Spain. On May 27, 2020, EHang issued a press release announcing it had obtained the world's first commercial pilot operation approval from the Civil Aviation Administration of China to use EHang 216 passenger-grade AAVs for air logistics purposes. On July 29, 2020, EHang announced the EHang 216 had obtained a Special Flight Operations Certificate issued by the Transport Canada Civil Aviation. On July 20, 2020, EHang announced it would "build a new AAV production facility in Yunfu city in Guangdong, China with a planned initial annual capacity of 600 units and an RMB42 million . . . investment supported by the local government in the facility." On December 28, 2020, EHang issued a press release announcing "the launch of its own autonomous urban air mobility ('UAM') services with its strategic partner Greenland Hong Kong Holdings Limited . . . ." on January 12, 2021, EHang announced "strategic partnerships with Zhuhai Da Heng Qin Pan-Tourism Development Co., Ltd., Zhuhai Huafa

4

Sports Operations Management Co., Ltd. and Flying World (Zhuhai) Technology Co., Ltd. to jointly initiate Urban Air Mobility ('UAM') operations for aerial sightseeing and other air mobility services in the Hengqin New Area, the largest island and a Free Trade Zone in southeast Zhuhai in Guangdong Province of China." On January 21, 2021, EHang announced that it will perform trial operations of the EH216 in three countries: Spain, the United Kingdom and the Netherlands.

Throughout the class period EHang regularly filed form 6-Ks and 20-Fs with the SEC, disclosing the Company's financial results during the relevant time period.

During the February 16, 2021 trading day, Wolfpack Research ("Wolfpack") published a report entitled: "EHang: A Stock Promotion Destined to Crash and Burn." In its summary, Wolfpack wrote that EHang "[I]s an elaborate stock promotion, built on largely fabricated revenues based on sham sales contracts with a customer who appears to us to be more interested in helping inflate the value of its investment in EH (i.e., pump EH's stock price) than actually buying its products. EH has perpetuated its story with a collection of lies about its products, manufacturing, revenues, partnerships, and potential regulatory approval of its purported main business, an 'autonomous' aerial vehicle ('AAV') ridesharing network."

The report contains numerous allegations purporting to show that EHang is nothing more than a "pump and dump". The Wolfpack report claims that "EH's relationship with its primary purported customer is a sham. Government records and credit reports show that EH's major customer is [Kunxiang]. We have gathered extensive evidence including behind-the-scenes photographs, recorded phone calls, and videos of on-site visits to EH's various facilities, as well as Kunxiang's offices which lead us to believe that Kunxiang signed sham sales contracts to benefits its investment (stock price) in EH."

Wolfpack further reported that "EH has only collected on a fraction of its reported sales since its mid-December 2019 IPO. We see EH's collection rate of only 20% and DSOs at nearly 200 days (despite its purported credit terms of up to 180 days) as a clear indication of fabricated revenues." Wolfpack noted that although EH has reported RMB125.5 million (~18 million) in total revenues since its December 2019 IPO, that "its accounts receivable balance has increased by ~RMB100.3 million (~14.4 million)," meaning that "EH has only collected RMB25.2 million (~$3.6 million) in cash since becoming a publicly traded company."

Additionally, Wolfpack further detailed that "in just 14 months as a publicly traded company, EH's PR team has put out 50 press releases . . . . However, EH's constant stream of press releases are easily proven untrue."

Furthermore, Wolfpack wrote that it "visited EH's corporate headquarters/main manufacturing facility in Guangzhou, which only reinforced our belief that EH isn't a legitimate company. Similar to frauds we have exposed in the past, EH's headquarters/main manufacturing facility was practically empty when our investigator visited in the middle of a workday. There was minimal activity and strikingly few employees." Wolfpack Research was "not able to find any production equipment or raw material inventory on site," such that "it is highly likely that EH has the near-finished parts manufactured and shipped in from contractors, performs simple light assembly on site, and then stores units at EH's corporate headquarters in Guangzhou." Wolfpack "question[ed] whether EH's products, including EH216, can be legally claimed as 'manufactured by EHang," and wrote that "[t]he PRC lawyers we spoke to believe that EH may be violating PRC laws regarding manufacturer certification and labeling, at the least."

Moreover, Wolfpack further wrote that it "spoke on the record with a leading expert in the eVTOL industry, a manufacturing set-up specialist, and Chinese lawyers. Based on their

6

expert opinions, even if EH was intended to be a real business, we believe its product is majorly flawed, inherently dangerous and would likely attract very few, if any, actual buyers." Finally, Wolfpack wrote that it "obtained Chinese court records which show that EH's ADRs may already be in serious jeopardy due to legal issues in China."

All of Wolfpack's allegations were supported with extensive evidence obtained from its investigation into the Company.

Through the Actions, Rautanen seeks to recover for himself and absent class members the substantial losses that were suffered as a result of the defendants' fraud.

## ARGUMENT

## I.   THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan*

7

*v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements that artificially inflated the price of EHang securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct[]").

## II.   RAUTANEN IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of

adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i).

Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the

person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77

(S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)

(describing the PSLRA's process for determining the "most adequate plaintiff"); *Tronox*, 262

F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is

the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class

member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the

interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of

adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei

Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

**B.      Under the PSLRA, Rautanen Should be Appointed Lead Plaintiff**

As discussed below, Rautanen should be appointed Lead Plaintiff because all of the

PSLRA's procedural hurdles have been satisfied, Rautanen holds the largest financial interest of

any movant, and Rautanen otherwise satisfies Rule 23's typicality and adequacy requirements.

**1.      Rautanen Filed a Timely Motion**

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to

publish notice within twenty (20) days of its filing.  15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for

first-filed plaintiff Eyobe Amberber published notice of the lead plaintiff deadline via *Globe*

*Newswire* on February 18, 2021. *See* Ex. A; *see In re Millennial Media, Inc. Sec. Litig.*, 87 F. Supp. 3d 563, 567 (S.D.N.Y. 2015) (finding publication in *Globe Newswire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after publication of the notice, *i.e.*, on or before April 19, 2021. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Rautanen's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Rautanen timely signed and submitted the requisite certification, identifying all of his relevant EHang trades during the Class Period, and detailing Rautanen's suitability to serve as Lead Plaintiff in this case. *See* Ex. B.  The PSLRA's procedural requirements have therefore been met**.**

### 2.      Rautanen Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4. Courts have placed the most emphasis on the last of the

four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at \*4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Rautanen purchased 10,000 net and 10,000 total EHang shares, expended $797,100 in net funds and suffered losses of $247,555.55 attributable to the fraud. *See* Ex. B. Rautanen is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.     Rautanen Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at \*2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

11

Rautanen's claims are clearly typical of the Class's claims.  Rautanen purchased EHang securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against EHang and certain of its officers under the federal securities laws. Because the factual and legal bases of Rautanen's claims are similar to those of the Class's claims, Rautenen necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in his certification, *see* Ex. B, Rautanen's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean*

12

*Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same).

Rautanen has also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class.  As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation.  *See* Ex. C.  Consequently, Rautanen is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Rautanen respectfully submits that he is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

## III.  RAUTANEN'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Rautanen has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. C; *see also Reitan v. China Mobile Games & Entm't Grp.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Sterrett v. Sonim Techs., Inc.*, No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole

13

lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the

14

nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead counsel, recovered a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (appointed sole lead counsel for the class); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (appointed as sole lead counsel for the class); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (appointed as sole lead counsel for the class); *Liu v. Intercept Pharms. Inc.,* No. 1:17-cv-07371-LAK (S.D.N.Y.) (appointed as sole lead counsel for the class); *Lehmann v. Ohr Pharm. Inc.*, No. 1:18-cv-01284-LAP (S.D.N.Y.) (appointed as sole lead counsel for the class); *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (appointed as co-lead counsel for the class); *In re CV Scis., Inc. Sec. Litig.*, No. 2:18-cv-01602-JAD-BNM (D. Nev.) (appointed as sole lead counsel for the class); *In re Amarin Corp. PLC Sec. Litig.*, No. 3:19-cv-06601-BRM-TJB (D.N.J.) (appointed as co-lead counsel for the class); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (appointed as sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[5] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[6] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Rautanen respectfully requests that the Court (1) consolidate the above-captioned actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: April 19, 2021                                    Respectfully submitted,

---

[5]    *See* Ex. D (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[6]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

16

**FARUQI & FARUQI, LLP**

By:     */s/ James M. Wilson, Jr.*
         James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice*
forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com
            rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff and
[Proposed] Lead Counsel for the putative
Class*

17