**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EYOBE AMBERBER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG LU,<br><br>Defendants. | Case No. 1:21-cv-01392-GBD<br><br>CLASS ACTION |
| VIVIAN CHAUMONT, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG LU,<br><br>Defendants. | Case No. 1:21-cv-01526-GBD<br><br>CLASS ACTION |

**SERGIU RATA'S MEMORANDUM IN OPPOSITION TO THE COMPETING MOTIONS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

i

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   COMPETING MOTIONS ................................................................................................... 3

III.  ARGUMENT........................................................................................................................ 3

    A.   The Court Should Consolidate the Above-Captioned Actions. .......................................... 3

    B.   The Court Should Appoint Rata Lead Plaintiff. ................................................................. 3

        1.   Rata has the largest financial interest of any movant. ................................................... 3

        2.   Rata is a typical and adequate plaintiff. ........................................................................ 4

    C.   The Wolfpack Report Was Issued on *February 16*, 2021 ................................................. 5

    D.   Rautanen's New Position Is Antagonistic to the Class, Rendering Him Inadequate........ 11

    E.   Rautanen has failed to offer even *prima facie* evidence to support his adequacy as a
         proposed lead plaintiff. ................................................................................................... 16

    F.   The Court Should Approve of Rata's Selection of Block & Leviton LLP as Lead
         Counsel. ........................................................................................................................... 17

IV.  CONCLUSION.................................................................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Amgen, Inc. v. Conn. Ret. Plans*,
568 U.S. 455 (2013)............................................................................................... 12

*Eichenholtz v. Verifone Holdings, Inc.*,
No. 07-cv-6140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) .................................. 14

*Evellard v. LendingClub Corp.*,
2016 WL 9108914 (N.D. Cal. Aug. 15, 2016) ........................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014)................................................................................... 11, 13, 15

*Hardy v. MabVax Therapeutics Holdings*,
No. 18-cv-1160, 2018 WL 4252345 (S.D. Cal. Sep. 6, 2018)...................................... 14

*Hom v. Vale, S.A.*,
No. 15-cv-9539, 2016 WL 880201 (S.D.N.Y. Mar. 7, 2016)......................................... 6

*Horowitz v. Sunedison, Inc.*,
No. 15-cv-1769, 2016 WL 1161600 (E.D. Mo. Mar. 24, 2016)................................... 14

*In re Fuwei Films Sec. Litig.*,
634 F. Supp. 2d 419 (S.D.N.Y. 2009)........................................................................ 15

*In re HEXO Corp. Sec. Litig.*,
No. 19-cv-10965, 2020 WL 5503634 (S.D.N.Y. Sep. 11, 2020) ................................. 16

*In re Initial Public Offering Secs. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................ 12

*In re Network Assocs. Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ....................................................................... 14

*In re Pfizer Inc. Sec. Litig.*,
819 F.3d 642 (2d Cir. 2016)...................................................................................... 13

*Longo v. OSI Systems, Inc.*,
Case No. CV 17-8841 FMO, 2021 WL 1232678 (C.D. Cal. Mar. 31, 2021).............. 15

*Perez v. HEXO Corp.*,
No. 19-cv-10965, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) .................................. 16

*Sgalambo v. McKenzie,*
268 F.R.D. 170 (S.D.N.Y. 2010) ........................................................................................ 4, 5

**Statutes**

15 U.S.C. § 78u-4(a)(3). ..................................................................................................... 4, 17

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................................... 4, 5

## I.    INTRODUCTION

Sergiu Rata has the largest financial interest in the relief sought by the class. He lost $376,126.12 on his purchases of EHang Holdings Limited ("EHang") common stock during the class period. His losses are approximately $130,000 higher than those of the only other remaining, competing movant, Timo Rautanen. Rata is typical, adequate, has selected competent counsel and his motion should be granted.

In a parallel securities class action filed against EHang in the Central District of California, lead plaintiff opposition briefs were filed on April 26, 2021. In his opposition filed there, Rautanen disingenuously claimed that the sole corrective disclosure in this case, a report by Wolfpack Research which allegedly exposed fraudulent practices at EHang, was released and disseminated on February 15, 2021, and the stock market began to incorporate and digest the information from that report on the morning of February 16, 2021. So, Rautanen argues, all stock purchases made on the 16th came after the release of the corrective information, and anyone who purchased on the 16th, such as Rata, would have no recoverable losses.

Rautanen's argument is factually wrong, contrary to the position he previously took in this case, contradicts factual representations made by his counsel, Faruqi and Faruqi LLP and, worst of all, is antagonistic to the best interests of the class. Wolfpack itself says it released its EHang report just before 2 pm *on February 16, 2021.* EHang itself agrees; when it responded to the report on the 16th EHang also said it was released that day. That should end the matter.

But, as confirmation of those facts, even a cursory review of the stock trading in EHang on February 16 establishes the report was released and impacted the market in the afternoon of February 16. EHang's stock price opened on the 16th $0.59 per share lower than its closing price of $124.09 on Friday February 12. (Monday February 15 was President's Day and the market was

closed.) The stock traded in a range between $124 and just below $120 per share during the early part of trading on the 16th. Just before 2 pm, after the Wolfpack report was publicly disseminated, EHang's stock began to crash and ultimately plunged by 59%, closing at $46.30 per share. Trading volume skyrocketed after 2 pm on the 16th. There should be little, if any, dispute that the Wolfpack report was released and absorbed by the market during the trading day on February 16.

Rautanen, however, sells out the class by claiming the report was released on the 15th, and digested by the market at the opening on the 16th, just to advance his – and his lawyer's – personal interests to be selected lead plaintiff and counsel, respectively. Rautanen's concession – which Rata vehemently disputes – would allow Defendants to mount a credible price impact defense to defeat class certification. They could easily point to the fact that EHang's stock price barely reacted to the report's release on the 15th, and argue that the fraud-on-the-market presumption of reliance is inapplicable here, as there was no price impact. They will also be able to establish that the class suffered little to no damages as, according to Rautanen, the Wolfpack report was already in the market on the morning of the 16th, so the stock drop later that day could not have been caused by the re-release of the report under Rautanen's theory.

Plus, every complaint on file and every movant in their opening papers asserts that the Class Period here runs through and includes February 16, 2021. *See Amberber*, ECF No. 1 at ¶ 5. All of the credible facts firmly establish that the Wolfpack report was publicly released and disseminated during the trading day on February 16, 2021.

Accordingly, all EHang stock purchases made on February 16 are properly included in the class. Sergiu Rata has the largest financial interest in the relief sought by the class, is otherwise adequate and typical, and the Court should therefore appoint him as Lead Plaintiff and approve of his selection of Block & Leviton LLP as Lead Counsel.

2

## II.    COMPETING MOTIONS

Eleven movants filed motions for appointment as lead plaintiff on April 19, 2021. Nine movants have filed notices of non-opposition, effectively withdrawing themselves from consideration.[1] The three remaining movants are:

| Movant | Loss | Proposed Lead Counsel |
|---|---|---|
| Sergiu Rata | $376,126.12 | Block & Leviton LLP |
| Timo Rautanen | $247,555.55 | Faruqi & Faruqi, LLP |

## III.    ARGUMENT

### A.  The Court Should Consolidate the Above-Captioned Actions.

For the reasons set forth in Rata's motion, the Court should consolidate the two above-captioned actions into the lowest-numbered *Amberber* docket. *See* ECF No. 39 at 4-5. Rautanen agrees that these cases should be consolidated. *See*, ECF No. 15 at 7-8 (Rautanen Memo.). Indeed, in his opening motion, Rautanen asked the Court to consolidate the above-captioned actions because they "clearly involve" common questions of law and fact. Rautanen Memo., ECF No. 15 at 7-8.

### B.  The Court Should Appoint Rata Lead Plaintiff.

#### 1.  Rata has the largest financial interest of any movant.

As the foregoing chart demonstrates, Mr. Rata has the largest financial interest, by a considerable margin, of any lead plaintiff movant. Again, for purposes of calculating their reported financial interest in this matter, every single movant used the same Class Period, running from

---

[1] Movants Anciger, Oviatt, Shitrit, Hong, Gupta, Yang, Pineda, Hong Kong Hua Xia International Holdings Ltd. ("Hong Kong Hua Xia"), and Chen have filed non-oppositions to the competing motions, effectively withdrawing themselves from consideration. *See* ECF Nos. 49, 50, 51, 52, 53, 54, 56. Shitrit and Hong Kong Hua Xia filed their non-oppositions in the C.D. Cal. action. *See Klein*, Case No. 21-cv-1811 (C.D. Cal.), ECF Nos. 49, 56.

December 12, 2019 to February 16, 2021, inclusive. This includes Rautanen. As discussed below, however, in the third-filed *Klein* action pending in the Central District of California, Rautanen raised for the first time in his opposition brief a specious argument that purchases made on February 16, 2021 should not be included in the class.[2] As discussed below, Rautanen's argument is remarkably self-serving, deleterious to the Class, and renders Rautanen inadequate.

### 2. Rata is a typical and adequate plaintiff.

When selecting a lead plaintiff, the Court is to determine whether the presumptive lead plaintiff (Rata) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a "preliminary showing" that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010) (citation omitted).

"'Typicality requires that the claims of the class representatives be typical to those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id.* at 173-74 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(3).

Rata satisfies the typicality requirement because he: (1) purchased shares in EHang during the Class Period – the Class Period that all complaints on file and all investors seeking appointment as lead plaintiff used – at allegedly inflated prices; and (2) suffered damages when Defendants' alleged misconduct came to light. Therefore, Rata's claims are typical, and indeed, they are all but

---

[2] *See* Rautanen Opp. from *Klein*, attached as Ex. A to the Supp. Block Decl. The deadlines for opposition and reply briefs were one week ahead in the C.D. Cal. action.

identical to those of other Class members, like the competing movants, who sustained damages as a result of the alleged misrepresentations and/or omissions during the Class Period.

"The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable of and qualified to vigorously represent the interests of the class . . . ." *Sgalambo*, 268 F.R.D. at 174 (citation omitted); *see also* Fed. R. Civ. P. 23(a)(4).

Rata will adequately protect the interests of the proposed Class. Rata's interests and those of the proposed Class are closely aligned, as both have suffered damages as a result of Defendants' alleged materially untrue statements and omissions of fact. Moreover, by suffering the largest losses of any movant before the Court, Rata has a significant interest in vigorously pursuing this action on behalf of the entire Class. There are no facts indicating the existence of any conflict of interest between Rata and the absentee Class. Furthermore, as indicated in his opening brief (ECF No. 39 at 8-9; ECF No. 40-6 (Block & Leviton Firm CV)), Rata has selected a law firm with extensive securities litigation experience. Importantly, and in stark contrast to Rautanen who has offered no information about himself whatsoever, Rata submitted a sworn Declaration with his opening motion detailing his education, employment, and investment experience, and attesting to his understanding and willingness to fulfill the obligations of a lead plaintiff. *See* ECF No. 40-5.

Rata therefore satisfies the typicality and adequacy requirements, and no competing movant has or can come forward with proof to the contrary. Rata is, therefore, the presumptive Lead Plaintiff.

### C.  The Wolfpack Report Was Issued on *February 16*, 2021

In the *Klein* matter pending in the Central District of California, Rautanen filed an opposition brief arguing that the Wolfpack report was issued and disseminated on February 15,

2021 and incorporated into EHang's stock price at the opening of trading on February 16. We anticipate Rautanen making the same arguments to this Court.

As with all of the opening motions before this Court, every single movant, including Rautanen, asserted that the Class Period runs through and includes February 16, 2021. This is also true of both complaints on file in this district, *See, e.g.*, *Amberber*, ECF No. 1 at ¶ 1; *Chaumont*, ECF No. 1 at ¶ 1, and the *Klein* case on file in the Central District of California. Rautanen Memo., ECF No. 15 at 1.[3] After seeing that he had suffered a far smaller loss than Rata, for the first time in his opposition brief in *Klein*, Rautanen contends that the lone corrective disclosure was made on President's Day, February 15, 2021. Not so.

The best and most compelling evidence of when the Wolfpack report was issued comes from Wolfpack itself. On February 16, 2021, at 1:53 pm, Wolfpack confirmed that it issued the report on February 16:

---

[3] As Rata noted in his opening motion, the *Amberber* complaint alleged that the Class Period ran through February 16, 2021, but on that date, included only purchases made at $112.00 or more. *See* Rata Memo., ECF No. 39 at 5 n.4. The *Chaumont* and *Klein* actions both included all purchases on February 16, 2021. For purposes of determining which movant has the largest financial interest at this lead plaintiff selection stage, courts generally use the longest class period on file. *See, e.g.*, *Hom v. Vale, S.A.*, No. 15-cv-9539, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (noting that the general practice in conducting lead plaintiff motion practice is to use the "longer, most inclusive" class period available on the theory that it "encompasses more potential class members and damages").



Indeed, EHang itself issued a press release on February 16, 2021 responding "to the allegations raised in a report by Wolfpack Research **dated February 16, 2021**." *See* Ex., B, Supp. Block Decl. (emphasis added). Numerous news stories on February 16, 2021 reported that Wolfpack issued a short report on February *16*, 2021. *See Seeking Alpha*, February 16, 2021 ("Chinese ADR EHang Holdings . . . plunged 63% after a new short report from Wolfpack Research."); *CNN*, February 17, 2021 ("[s]hares . . . plummeted nearly 63% in New York on Tuesday [February 16] after Wolfpack Research released a scathing, detailed report questioning EHang's business"); *Bloomberg*, February 17, 2021 ("[o]n Tuesday [February 16 EHang's] share price suffered a serious malfunction. More than 60% of its value went up in smoke after a short seller, Wolfpack

Research published a report questioning EHang's sales relationships, technology and regulatory approvals."). Ex. C, Supp. Block Decl.

In his opening Lead Plaintiff memorandum, Rautanen himself states: "**During the February 16, 2021 trading day**, Wolfpack Research ("Wolfpack") published a report entitled: 'EHang: A Stock Promotion Destined to Crash and Burn." ECF No. 15 at 5 (emphasis added.) Rautanen's counsel, Faruqui, states on their webpage promoting their investigation of EHang: "Specifically, **on February 16, 2021**, analyst Wolfpack Research issued a scathing report concerning EHang . . ." Ex. D, Supp. Block Decl. (emphasis added.) The Faruqi firm issued at least 76 press releases to EHang investors with each one stating that "on February 16, 2021 Wolfpack Research issued" its report. Ex. E, Supp. Block Decl.

Now, only when it is in his own interest, and in a transparent attempt to catapult himself as the lead plaintiff, Rautanen argues the report was actually issued on the 15th. The only basis Rautanen has for his new claim that the Wolfpack report "began leaking on February 15, 2021" is a reference to the report, in Chinese, on the Wolfpack website, which references a date of February 15, 2021. Rautanen then claims that Wolfpack "created a webpage in Chinese" on February 15, 2021 at 1:10:32 pm. Rautanen *Klein* Opp., attached as Ex. A, Supp. Block Decl. The only evidence in support of this factual assertion is a link to the Wolfpack website, which links to the report in Chinese. *Id.* at n. 7. Nothing on this webpage, however, indicates when it was created or posted.

Rautanen tries to bolster his claim that the report was actually released on the 15th by trying to connect a version of the report released in Chinese to a YouTube video which "is a 9:17 minute long tour of EHang's Guangzhou, China facility by a Wolfpack investigator." Rautanen argues that the Chinese report version connects to the YouTube video which "contains multiple subtitles explaining what the investigator is seeing." Rautanen *Klein* Opp., attached as Ex. A, Supp. Block

8

Decl. His opposition brief then links to the Wolfpack website which directs the viewer to the video, which can be viewed on YouTube. *Id.* at 6, n. 8. The video, however, was uploaded to YouTube, **on February 16, 2021!** See the date listed below the "EH GZ Factory Tour Video" title in the screenshot below:



A careful review of the webpage and the Chinese version of the report strongly suggests that even it is dated and released on February 16, 2021:

9



Rautanen makes the unsubstantiated leap that because there is a date of February 15, 2021 above the first "Download Full Report" button that the report must have been **released** on the 15th. But the evidence overwhelmingly establishes that the Wolfpack short report was released on February 16, 2021.[4]

---

[4] As discussed below, even if the Chinese report had been posted to the Wolfpack website on the 15th (however unlikely), it is still insufficient to establish that U.S. investors knew of it, that its assertions were incorporated into EHang's stock price before approximately 2 pm on the 16th.

### D. Rautanen's New Position Is Antagonistic to the Class, Rendering Him Inadequate

Rautanen's concession that the Wolfpack report was released on the 15th and incorporated into EHang's market price on the morning of the 16th is antagonistic to the best interests of the class, rendering Rautanen an inadequate class representative.

This is a securities fraud case in which plaintiffs will rely on the fraud-on-the-market presumption to establish a reliance. The fraud-on-the-market theory "holds that 'the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations.' The Court [in *Basic, Inc. v. Levinson]* also noted that, rather than scrutinize every piece of public information about a company for himself, the typical 'investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price'—the belief that it reflects all public, material information. As a result, whenever the investor buys or sells stock at the market price, his reliance on any public material misrepresentations ... may be presumed for purposes of a Rule 10b–5 action.'" *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014) ("*Halliburton II"*). In *Halliburton II,* the Court held that a defendant may rebut the fraud-on-the-market's presumption of reliance with "any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff." *Id.* In other words, "if a defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price, or that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud, then the presumption of reliance would not apply." *Id.* As the Court explained, the presumption of reliance can "be rebutted by appropriate evidence, including evidence that the asserted misrepresentation (or its correction) did not affect the market price of the defendant's stock." *Id.* at 2414.

11

Under the fraud-on-the-market theory, "in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors, through the market price." *Amgen, Inc. v. Conn. Ret. Plans*, 568 U.S. 455, 466 (2013); *In re Initial Public Offering Secs. Litig.*, 241 F. Supp. 2d 281, 375 (S.D.N.Y. 2003) ("[w]here such an 'efficient market' exists, all public information is assumed to be rapidly assimilated and therefore is assumed to affect prices.").

Rautanen asserts that the Wolfpack report was fully disseminated and available to investors on February 15, 2021 – President's Day in the U.S., when the stock markets were closed for trading. According to Rautanen the "market began digesting the information" in the Wolfpack report "when the markets opened the morning of February 16, 2021." Rautanen *Klein* Opp. at 7, attached as Ex. A, Supp. Block Decl. According to Rautanen, EHang's stock closed at $124.09 on February 12 and opened on February 16 at $122.70.[5] Rautanen's stock chart, purporting to show intraday trading prices of EHang on February 16, *id.*, shows the stock price barely declining between the opening and 11 a.m.

Thus, the stock price declined by $0.59 per share from its close on the 12th to its open on the 16th, a less than 0.5% drop. In fact, the stock traded up on the morning of the 16th, to as high as $124.09, equal to the February 12, 2021 close. And, during the first hour and a half of trading on the 16th, it barely declined further, falling slightly below $120 by 11:00 a.m.

In stark contrast, when Wolfpack issued its tweet at 1:53 pm on the 16th announcing the release of its report, the stock price fell from $112.75 per share to close, two and a half hours later, at $46.30 per share, a $66.45 per share drop, or a whopping 59% overall decline.

---

[5] In fact, the stock opened at $123.50 on February 16, 2021. *See* Ex. F, Supp. Block Decl.

Rautanen, however, has now locked himself—and if appointed Lead Plaintiff, the entire class—into conceding that the Wolfpack report was issued, disseminated, and incorporated into EHang's stock price on the morning of February 16. Rautanen has set the Defendants up for the perfect "price impact" argument: accepting Rautanen's facts as true, Defendants can easily show that "the correction did not affect the market price of" EHang's stock, *i.e.*, it fell by .05% in response. *Halliburton II*, 134 S. Ct. at 2414. If appointed lead, Rautanen has doomed the class to serious risk that certification will be denied.

Even if, somehow, he could overcome the price impact argument, Rautanen has made recovering the $66.45 per share drop after release of the Wolfpack report extremely difficult, if not impossible. Defendants will surely argue that in a fraud-on-the-market case material information is rapidly incorporated into the stock price. Since Rautanen contends the Wolfpack report was released on the 15th and incorporated into the stock price on the morning of the 16th, any drop later in the day could not be causally connected to the report – since it was not "new" information. *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 659 (2d Cir. 2016) ("fraudulent statements containing the same falsehoods as earlier misrepresentations 'will not cause a change in the stock price . . . because the market has already digested that information and incorporated it into the price.'"). Thus, at best, the class could recover the drop from the closing price of $124.09 to its early morning trading price on the 16th or $.59 per share.

Since the plaintiff has the burden to establish the presumption of reliance to invoke the fraud-on-the-market theory, loss causation, and damages, Rautanen cannot serve as an effective lead plaintiff. *See, e.g.*, *Evellard v. LendingClub Corp.*, 2016 WL 9108914, at *3 (N.D. Cal. Aug. 15, 2016) ("[A]n important consideration in selecting the lead plaintiff is to estimate the class period. Lead plaintiff candidates will typically stretch or shrink the class period in order to jockey

13

for position so as to wind up with the largest loss."); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-6140, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008) ("[I]t is unclear why a plaintiff would argue for a shorter class period at this stage, which would have the effect of reducing the class size and limiting the amount of potential damages, unless it was in the best interest of that particular plaintiff only. Consequently, at this stage, the court is wary of arguments advocating a shorter class period instead of the longest potential class period."); *Horowitz v. Sunedison, Inc.*, No. 15-cv-1769, 2016 WL 1161600, at *3 (E.D. Mo. Mar. 24, 2016) (similar argument to Rautanen's appeared "calculated to further [movant's] own interest in being named lead plaintiff, rather than the interest of all potential class members."). Based on Rautanen's self-interested argument to truncate the Class Period, Rautanen is "susceptible to accusations of gamesmanship" for the sole purpose of being appointed as lead plaintiff. *Hardy v. MabVax Therapeutics Holdings*, No. 18-cv-1160, 2018 WL 4252345, at *5 (S.D. Cal. Sep. 6, 2018).

Here, Rautanen's jockeying for position puts his own personal interests–and those of his lawyers–at odds with the best interests of the class. "The lead plaintiff owes a fiduciary duty to all members of the proposed class to provide fair and adequate representation and actively to work with class counsel to obtain the largest recovery for the proposed class consistent with good faith and meritorious advocacy." *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999). By conceding that the Wolfpack report was disseminated and known to all investors on February 15, 2021, Rautanen imperils the ability of the entire class to be certified and prove recoverable damages. He makes it extremely difficult, if not impossible, to even attempt to capture the large stock decline on the 16th.

Rata, of course, vehemently disagrees with Rautanen that the Wolfpack report was disseminated on February 15. Rata has the strongest incentive to argue—and prove—that the

14

report was not released until the afternoon of the 16th. This aligns Rata's personal interests with the best interests of the class. Unlike Rautanen, Rata has not sold out the class out just to advance his own personal interests.[6]

Plus, even if the Chinese version of the Wolfpack report *was* posted to its website on the 15th (and there is no reason to believe that it was), even that would not be sufficient to establish that it was "known to investors" or "incorporated into" EHang's stock price before the English version was publicly released on the 16th. "[I]t is plainly unreasonable to require an investor to comb . . . websites in languages such as Arabic, Chinese, Russian, etc., to determine whether" there is "information that may be material to his or her investment." *Longo v. OSI Systems, Inc.*, Case No. CV 17-8841 FMO, Slip op., 2021 WL 1232678 at *7 (C.D. Cal. Mar. 31, 2021). Information written "in Chinese does not transform the information contained" therein to be "matters of general public knowledge." *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009).

In other words, investors such as Rata are not required to scour the websites of any and all analyst research firms for information about EHang before making their stock purchases. This would be antithetical to the fraud-on-the-market theory. *Halliburton II*, 134 S. Ct. at 2414 ("rather than scrutinize every piece of public information about a company for himself, the typical 'investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price.' "). And, even if he did so, there is no legitimate basis to find that Rata was required to translate the Wolfpack report before he bought his stock. *Longo*, 2021 WL 1232678 at *7 (rejecting

---

[6] If appointed, Rautanen will have a strong incentive for a quick, cheap, settlement because of his concession that the Wolfpack report was disseminated on February 15. It will make his ability to prevail on class certification and prove class wide damages extremely difficult.

argument that investor could use "Google translate feature" to understand documents written in a foreign language.)

Rautanen, however, has already conceded (wrongly) that the report was disseminated on the 15th and incorporated into the stock price on the morning of the 16th. If appointed lead, he cannot argue that investors in the United States should not be charged with knowledge of the report before its English version release on the afternoon of the 16th.

Rata purchased all of his EHang common stock on February 16 at prices above $120 per share – 1,049 shares at $120.73 per share and 6,666 at $120.91 per share. He clearly purchased all of his stock *before* the Wolfpack report was publicly disseminated and EHang's stock began to reflect the report's allegations. He therefore has the largest financial interest in the relief sought by the class, is otherwise adequate and typical – indeed no other movant suggests there is anything atypical or inadequate about Rata – and the Court should grant his motion.

### E. Rautanen has failed to offer even *prima facie* evidence to support his adequacy as a proposed lead plaintiff.

Rautanen, in addition to having a substantially smaller financial interest in this litigation than Rata and selling out the class with his fatal concession, has failed to offer any evidence whatsoever to support his adequacy in this action. Rautanen fails to provide even a modicum of information about himself for the Court to evaluate his lead plaintiff application. All Rautanen has submitted in support of his motion is a template certification specifying his transactions in EHang securities. *See* ECF No. 16-2. We know nothing of his educational background, investment experience, or personal history to assure that he will be an adequate class representative. This alone should disqualify him from consideration. *See, e.g.*, *Perez v. HEXO Corp.*, No. 19-cv-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, No. 19-cv-10965, 2020 WL 5503634 (S.D.N.Y. Sep. 11, 2020) ("given [movant's]

16

failure to provide *any* information regarding his experience in his preliminary motion, the Court questions whether [movant] will meaningfully oversee and control the prosecution of this consolidated class action.").

This stands in stark contrast to Rata, who has submitted a detailed, sworn Declaration demonstrating his adequacy. *See* ECF No. 40-5. And Rata has demonstrated a thorough understanding of the responsibilities of lead plaintiff and his commitment to fulfilling such obligations. *Id.* at ¶¶ 7-12.

### F.  The Court Should Approve of Rata's Selection of Block & Leviton LLP as Lead Counsel.

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Rata has selected Block & Leviton LLP as Lead Counsel for the Class. As the firm's resume reflects, Block & Leviton is highly experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* ECF No. 40-6. The Court may therefore be assured that by approving of Rata's selection of counsel, the members of the Class will receive top legal representation.

### IV.    CONCLUSION

Rata has the largest financial interest of any lead plaintiff movant in this litigation. He has satisfied each of the PSLRA's requirements for appoint as lead plaintiff. The Court should therefore appoint Rata as Lead Plaintiff and approve of his selection of Block & Leviton LLP as Lead Counsel.

Dated: May 3, 2021

Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
steti@blockleviton.com

*Attorneys for Mr. Rata and*
*Proposed Lead Counsel*

18

**CERTIFICATE OF SERVICE**

I hereby certify that on May 3, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ Jeffrey C. Block
Jeffrey C. Block