**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EYOBE AMBERBER, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-01392-GBD |
| Plaintiff, | CLASS ACTION |
| v. | |
| EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG XU, | |
| Defendants. | |
| VIVIAN CHAUMONT, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:21-cv-01526-GBD |
| Plaintiff, | CLASS ACTION |
| v. | |
| EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG XU, | |
| Defendants. | |

**TIMO RAUTANEN'S MEMORANDUM OF LAW IN OPPOSITION TO THE COMPETING MOTIONS AND IN FURTHER SUPPORT OF HIS MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT AS LEAD PLAINTIFF, AND (3) APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ..................... 3

II.     RAUTANEN SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS ........ 4

        A.      The PSLRA's Lead Plaintiff Provisions ................................................. 4

        B.      Losses Attributable to Purchases On February 16, 2021 Are Disqualified
                Because News Of The Fraud Was Disclosed On February 15, 2021 ..................... 5

        C.      Post-Disclosure Purchases Also Subject The Movant To A Unique Defense ........ 8

        D.      The Remaining Competing Motions Should Be Denied Because They Have A
                Smaller Financial Interest Than Rautanen ........................................................... 10

III.    RAUTANEN SHOULD BE APPOINTED LEAD PLAINTIFF AND HIS
        SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE
        APPROVED ................................................................................................................ 10

CONCLUSION.................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ..................................................................................4, 5

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) .....................................................................................3

*In re Fuwei Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) .....................................................................................5

*Galmi v. Teva Pharm. Indus. Ltd.*,
   302 F. Supp. 3d 485 (D. Conn. 2017).............................................................................7

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) .................................3, 5

*George v. China Auto. Sys., Inc.*
   No. 11 Civ. 7533(KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013)..................................5, 8

*Gordon v. Sonar Capital Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015)................................................................................9

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ..................................................................................3, 4

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007).............................................................................4

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)............................................................................................3

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................5

*Pearlstein v. BlackBerry Ltd.*,
   No. 13 Civ. 7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021)......................................8

*Rocco v. Nam Tai Elecs., Inc.*,
   245 F.R.D. 131 (S.D.N.Y. 2007) ..................................................................................5, 8

*In re Snap Inc. Sec. Litig.*,
   No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019).................5, 8, 9

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................................5

*In re Tronox, Inc. Sec. Litig.*,
     262 F.R.D. 338 (S.D.N.Y. 2009) ........................................................................3, 4

**Statutes**

15 U.S.C. § 78u-4(a)(3) ..................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 42(a) .........................................................................1, 3

Timo Rautanen ("Rautanen") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), in opposition to the competing lead plaintiff motions and in further support of his motion (ECF No. 14) to: (1) consolidate the above-captioned actions ("Actions"); (2) appoint Rautanen as Lead Plaintiff; and (3) approve Rautanen's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[1]

## PRELIMINARY STATEMENT

On April 19, 2021, eleven motions were filed by class members asking the Court to consolidate the above-captioned actions (the "Actions") and seeking appointment as lead plaintiff.

As an initial matter, consolidation of the two Actions is appropriate. The Actions involve common allegations of fact and assert violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against EHang Holdings Limited ("EHang") and certain of its officers.  As the Actions raise common issues of fact and law, they should be consolidated. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii); Fed. R. Civ. P. 42(a)(2).

With respect to the appointment of lead plaintiff, seven of the movants have now acknowledged that they do not have the largest financial interest in the litigation, the principal criteria the Court considers to determine the "most adequate plaintiff" to lead the Action under the PSLRA, all other things being equal. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see* ECF Nos. 49 (movant Danijel Anciger), 50 (movant James Oviatt), 51 (movant Gad Shitrit), 52 (movant Sung

---

[1]    Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

1

Hong), 53 (movant Tarun Gupta), 54 (movant Ramiro Pineda), 56 (movant Heidi Chen), and 57 (movant Esther Yang).

Of the four remaining motions, only Rautanen, with losses of $247,555.55, fully satisfies the requirements of the PSLRA: he timely filed a motion to be appointed lead plaintiff; he has the largest financial interest in the litigation; and satisfies the typicality and adequacy requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

None of other two remaining movants have a recoverable loss larger than Rautanen. Hong Kong Hua Xia International Holdings Ltd. claims losses of approximately $115,000. *See* ECF Nos. 31 to 33. This movant's claimed losses are far below the losses suffered by Rautanen and they should not be appointed lead plaintiff.

Sergiu Rata ("Rata") claimed losses of $376,126.12, but all of these losses are disqualified because the losses all arise from Rata's purchases of EHang's American Depository Receipts ("ADRs") after information of EHang's alleged fraud began leaking into the market. Losses attributable to the purchase of ADRs after a corrective disclosure is released into the market are disqualified from the PSLRA loss calculation because that investment was not made in reliance on the alleged fraud. Further, even if Rata's purchases of EHang ADRs after information of the alleged fraud was disclosed to the market could be counted, those purchases are a disqualifying factor under Rule 23's typicality requirement because those purchases subject Rata to a unique defense not faced by Rautanen.[2]

The remaining movants filed notices of non-opposition acknowledging that they do not have the largest financial interest under the PSLRA. Rautanen, with losses of $247,555.55 during

---

[2]    Movant Sung Hong, who has now filed a Notice of Non-Opposition, was in a similar situation because a large portion of Hong's purchases were made on February 16, 2021, after news of the alleged fraud was leaking into the market.

the Class Period, is therefore the presumptive lead plaintiff under the PSLRA. 15 U.S.C. § 78u-4(a)(3).

Rautanen respectfully submits that he is the movant who meets all of the requirements of the PSLRA and Rule 23 and he should be appointed Lead Plaintiff and his counsel appointed Lead Counsel.

**ARGUMENT**

## I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered").

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig.*, No. 09 Civ. 1951(DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

3

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants issued materially false and misleading statements that artificially inflated the price of EHang securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct[]"). Furthermore, all movants agree that the Actions should be consolidated.

## II.    RAUTANEN SHOULD BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.    The PSLRA's Lead Plaintiff Provisions

The PSLRA directs the Court to appoint as lead plaintiff the movant "that the court determines to be most capable of adequately representing the interests of class members[.]" 15 U.S.C. § 78u-4(a)(3)(B)(i).  The PSLRA further establishes a rebuttable presumption that the "most adequate plaintiff" is the movant who "has the largest financial interest in the relief sought by the class[,]" and who makes a prima facie showing that the movant satisfies Rule 23's criteria for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)-(cc); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *Tronox*, 262 F.R.D. at 343-44 (same).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased

4

by the movant during the Class Period; (3) the total net funds expended by the movant during the

Class Period; and (4) the approximate losses suffered by the movant. *See In re Fuwei Sec. Litig.*,

247 F.R.D. 432, 437 (S.D.N.Y. 2008); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F.

Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295

(E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No. 09 Civ. 1951(DC),

2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the

last of the four factors: the approximate loss suffered by the movant. *See, e.g.*, *Baughman*, 250

F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F.

Supp. 3d at 616.

Further, a lead plaintiff movant may be considered atypical under Rule 23 if he or she

buys stock in the defendant corporation after the disclosure of an alleged fraud. These

transactions subject him to a unique defense. *George v. China Auto. Sys., Inc.* No. 11 Civ.

7533(KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013); *Rocco v. Nam Tai Elecs., Inc.*,

245 F.R.D. 131, 136 (S.D.N.Y. 2007); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-

AGR, 2019 WL 2223800, at *2, *4 (C.D. Cal. Apr. 1, 2019).

### B.   Losses Attributable to Purchases On February 16, 2021 Are Disqualified Because News Of The Fraud Was Disclosed On February 15, 2021[3]

Losses from purchases that were made after the Wolfpack report[4] was released are

disqualified. Wolfpack's report began leaking on February 15, 2021. On February 15, 2021 at

1:10:32 pm, Wolfpack Research created a webpage in Chinese titled WOLFPACK RESEARCH

---

[3]   The arguments made herein regarding Rata's investments apply equally to all of the transactions made by movant Hong on February 16, 2021. Hong purchased 18,000 ADRs on February 16, 2021 that should not be considered because they took place after the fraud had been exposed to the market and Hong would be subject to the same unique defense as Rata. ECF Nos. 34 to 37.

[4]   Attached as Exhibit 1.

在2021年2月16日出具了有关亿航的英文调查报告。现提供该英文调查报告的中文要点，

供各位考鉴,[5] which translates to "WOLFPACK RESEARCH issued an English investigation

report on EHang on February 16, 2021. The Chinese main points of the English survey report are

now provided for your reference." The page contains a "download full report" button and a

video. The video is a 9:17 minute long tour of EHang's Guangzhou, China facility by a

Wolfpack investigator.[6] The video contains multiple subtitles in English explaining what the

investigator is seeing, such as "[n]o [o]ne in [s]ight [n]o [a]ctivity [d]uring [a] [w]eekday

[a]fternoon"[7] and "[t]he [l]evel of [s]ecurity is [a]mazing [] [i]s [t]his [h]ow [w]orld-[c]lass

[p]roprietary IP is [p]rotected?"[8] *See* also Exhibit 2 with screenshots from the video showing the

English language commentary.  The "download full report" button links to a pdf in Chinese titled

亿航：注定要崩毁的股票拉价之局 （报告要点之中文摘要）, which translates to "EHang:

A stock price increase that is doomed to collapse (Chinese summary of the main points of the

report)". The content of the Chinese document, when translated to English, is identical to the

English summary that appears prior to the English short report posted on February 16, 2021.[9]

  The market began digesting the information and was reflected in the EHang stock price

immediately when the markets opened the morning of February 16, 2021, when EHang ADR's

---

[5]  *See* https://wolfpackresearch.com/research/ehang-trans/
[6]  *See* https://wolfpackresearch.com/research/ehang-trans/ at 0:13.
[7]  *See* https://wolfpackresearch.com/research/ehang-trans/ at 0:22.
[8]  *See* https://wolfpackresearch.com/research/ehang-trans/ at 1:10.
[9]  The Chinese version has three extra bullet points in the summary which are not included in the English summary. However, the extra bullet points from the Chinese version appear in great detail in Wolfpack's full English report.

opened lower than its previous close and steadily continued losing value until the sharp drop

after the report was released in English.



On his certification, Rata lists two purchases made on February 16, 2021 at a purchase

price range of $120.73 - $120.91.

| Type of Transaction | Date | Quantity | Price Per ADR |
|---|---|---|---|
| **2/15/2021** **EHang Chinese Report Released** | | | |
| Purchase | 2/16/2021 | 1,049 | $120.73 |
| Purchase | 2/16/2021 | 6,666 | $120.91 |
| Sale | 2/16/2021 | (7,715) | $72.14 |

A movant's PSLRA losses do not include losses attributable to transactions made after

knowledge of the fraud is disclosed to the market. *See Galmi v. Teva Pharm. Indus. Ltd.*, 302 F.

Supp. 3d 485, 504 (D. Conn. 2017) ("TIAA's recoverable losses are further reduced to

approximately $20.3 million, which represents an elimination of $2.3 million in losses TIAA

7

incurred as a result of ADR purchases *after* the full extent of the fraud was disclosed. TIAA cannot attribute such losses to Teva's fraudulent statements because the falsity of those statements had been disclosed, and the market had corrected for such disclosure, before TIAA made the additional purchases").

Because all of Rata's purchases were made after the alleged fraud began to be disclosed, Rata's recoverable losses under the PSLRA amount to zero as he has no eligible purchases.[10]

**C.      Post-Disclosure Purchases Also Subject The Movant To A Unique Defense**

Post-disclosure purchases also subject a putative lead plaintiff to unique defenses that would require the named plaintiff to expend considerable time defending. *George*, 2013 WL 3357170, at *6 ("A named plaintiff who has engaged in a post-disclosure purchase is subject to the defense that the alleged misstatements or omissions were really not a factor in the purchasing decision but rather that other investment considerations drove the decision. Defendants may assert that the disclosure of the fraud was irrelevant to the named plaintiffs as demonstrated by their pattern of continued purchasing."); *Rocco*, 245 F.R.D. at 136 ("[T]his Court has consistently held that a person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative."); *Snap*, 2019 WL 2223800, at *2 ("The Court noted that Defendants might argue that the magnitude of [movant's] post-disclosure purchases could undermine his ability to assert the fraud-on-the-market presumption of reliance. Without the presumption of reliance, proof of individualized reliance from each member of the putative class would be required-which would effectively preclude class certification."). The presence of a

---

[10]     Similarly, six of Hong's purchases were made on February 16, 2021. Ex. 2. After removing all six of the purchases, Hong has actually made a $101,353.54 gain on his purchases. ECF No. 37-3.

unique defense may defeat class certification when it threatens to become the focus of the litigation. *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM), 2021 WL 253453, at *8 (S.D.N.Y. Jan. 26, 2021); *Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201 (S.D.N.Y. 2015) (quoting *Hallet v. Li & Fung Ltd.*, No. 95–cv–8917, 1997 WL 621111, at *3 (S.D.N.Y. Oct. 6, 1997)) ("the defendant need not show at the certification stage that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense.").

Here, Rata purchased 100% of his 7,715 ADRs on February 16, 2021 after the Chinese report was released, at a price range of $120.73 - $120.91 per ADR.

| Type of Transaction | Date | Quantity | Price Per ADR |
|---|---|---|---|
| Purchase | 2/16/2021 | 1,049 | $120.73 |
| Purchase | 2/16/2021 | 6,666 | $120.91 |
| Sale | 2/16/2021 | (7,715) | $72.14 |

Rata's post-disclosure purchases subject him to a unique defense that makes him atypical of the class. If Rata is selected as lead plaintiff, the unique defense will threaten to sidetrack the litigation by requiring a substantial amount of time to be spent demonstrating that Rata was not aware of the Chinese version of the Wolfpack report at the time his purchases were made. Additionally, Rata will be required to prove that purchasing 100% of his total class period shares after the corrective disclosure is not a disproportionately large percentage of the total amount of EHang ADRs he purchased. *See Snap*, 2019 WL 2223800, at *2, *4 (disqualifying two lead plaintiff movants who made post-disclosure purchases, holding that 60% constitutes "[a] disproportionately large percentage of [first movant's] stock" and holding that "whether 15% is a disproportionately large percentage of the [second movant's] stock could be the focus of

9

litigation were the [second movant] to be appointed lead plaintiff.).  As such, Rata should be disqualified.

> **D.      The Remaining Competing Motions Should Be Denied Because They Have A Smaller Financial Interest Than Rautanen**

The remaining movants have acknowledged that they do not have the largest financial interest, as reflected in the below table:

| Movant | Losses | Notice of Non-Opposition |
|---|---|---|
| Chen Yuan Group | $209,725.43 | ECF NO. 56 |
| Gad Shitrit | $136,678.73 | ECF NO. 51 |
| Esther Yang | $100,045.41 | ECF NO. 57 |
| Ramiro Pineda | $89,070.00 | ECF NO. 54 |
| Tarun Gupta | $82,137.00 | ECF NO. 53 |
| Danijel Anciger | $79,000.90 | ECF NO. 49 |
| James Gary Oviatt | $71,695.42 | ECF NO. 50 |
| Sung Hong | ($101,353.54) | ECF NO. 52 |

In sum, the remaining competing movants should not be appointed lead plaintiff because they all have suffered lower losses than Rautanen during the class period.

## III.     RAUTANEN SHOULD BE APPOINTED LEAD PLAINTIFF AND HIS SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Rautanen is the only proposed lead plaintiff with the highest losses that meets Rule 23's adequacy requirement and should be selected as lead plaintiff. Rautanen has $247,555.55 in losses arising from his purchase of EHang stock well before information of the alleged fraud was disclosed to the market. Unlike competing movant Rata, Rautanen is not subject to any unique defense. Additionally, Rautanen has moved with a single law firm demonstrating that he is acting in the best interests of the class by minimizing costs of the litigation. Finally, Rautanen suffered the largest recognizable losses during the Class Period.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the lead plaintiff is entitled to select and retain lead counsel for the Class, subject to the Court's approval. Rautanen has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a highly experienced minority and woman-owned law firm whose adequacy to serve as lead counsel in this case has not been challenged and, as reflected in the firm's resume, possesses extensive experience litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Decl. of James M. Wilson, Jr. in Supp. of Timo Rautanen's Mot. for (1) Consolidation; (2) Appointment as Lead Plaintiff; and (3) Approval of Lead Counsel (ECF No. 16), Ex. C, Firm Resume (ECF No. 16-3), and Ex. D, Women's Business Enterprise National Council Certificate (ECF No. 16-4).

## CONCLUSION

For the foregoing reasons and the reasons set forth in its Opening Memorandum of Law, Rautanen respectfully requests that the Court: (1) consolidate the above-captioned actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: May 3, 2021

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:  */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
rkillorin@faruqilaw.com

11

*Attorneys for [Proposed] Lead Plaintiff and [Proposed] Lead Counsel for the putative Class*

12