**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EYOBE AMBERBER, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG LU, <br><br> Defendants. | Case No. 1:21-cv-01392-GBD <br><br> <u>CLASS ACTION</u> |
| VIVIAN CHAUMONT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> EHANG HOLDINGS LIMITED, HUAZHI HU, RICHARD JIAN LIU, and EDWARD HUAXIANG LU, <br><br> Defendants. | Case No. 1:21-cv-01526-GBD <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF SERGIU RATA'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Timo Rautanen's opposition to the appointment of Sergiu Rata as lead plaintiff rests solely on Rautanen's request that the Court *shorten* the proposed class period. Here, both complaints on file in this Court allege that the class period ends on February 16, 2021. *Amberber v. EHang Holdings Ltd., et al.*, No. 21-cv-1392-GBD, ECF No. 1, and *Chaumont v. EHang Holdings Ltd., et al.*, No. 21-cv-1596-GBD, ECF No. 1. Rautanen, however, claims the class period should end on February 12, 2021 because he now asserts, contrary to his earlier position, that the only corrective disclosure in this case was revealed on February 15, 2021 and was reflected in EHang's stock price on the morning of February 16, 2021. Courts almost universally refuse to alter properly pled class periods during a lead plaintiff contest and there is no valid reason for this Court to depart from this common practice.

Since Rata has the largest financial interest in this litigation, and is also typical and adequate, and no competing movant has rebutted the presumption that Rata is the presumptive Lead Plaintiff, the Court should grant his motion.[1]

I.     **ARGUMENT**

   **A. The Court Should Use the Longest Pled Class Period – Which Ends on February 16, 2021**

At the lead plaintiff selection stage, courts use the longest alleged class period unless it is obviously frivolous. *See* Rata Opp., ECF No. 58 at 13-14; *see also Evellard v. LendingClub Corp.*, 2016 WL 9108914, at *3 (N.D. Cal. Aug. 15, 2016); *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-6140, 2008 WL 3925289, at *2 (N.D. Cal. Aug. 22, 2008); *Horowitz v. Sunedison, Inc.*, No. 15-cv-1769, 2016 WL 1161600, at *3 (E.D. Mo. Mar. 24, 2016) (similar argument to Rautanen's appeared "calculated to further [movant's] own interest in being named lead plaintiff,

---

[1] All movants agree that the Court should consolidate the above-captioned actions.

rather than the interest of all potential class members."); *Hardy v. MabVax Therapeutics Holdings*, No. 18-cv-1160, 2018 WL 4252345, at *5 (S.D. Cal. Sep. 6, 2018).

Here, both complaints on file in this District, and all movants in their motions, use the same class period—which ends on February 16, 2021. Only after seeing the transactions of competing movants did Rautanen change course and argue that the class period should now end on February 12, 2021. It should not. The class period properly ends on February 16, 2021.

### B. Rata Is Not Subject to Unique Defenses.

Rautanen argues that Rata is subject to unique defenses because Rata bought his shares "after the disclosure of an alleged fraud." Rautanen Opp., ECF No. 60 at 5. But this entire argument is premised on the false assertion that the Wolfpack Research report was already issued and disseminated when Rata bought his shares during the morning on February 16, 2021. *First*, Rata had no knowledge of the Wolfpack report at the time he bought his shares. This is obvious; the stock price was still trading very close to its February 12, 2021 closing price, and Rata would have had no incentive to purchase EHang shares had he known of the Wolfpack report. Like all investors, Rata purchased his EHang stock in reliance on the integrity of the market price which, during the early part of February 16, 20201, did not yet reflect or incorporate the information contained in the Wolfpack report. *Second*, and more fundamentally, Wolfpack had not yet released or disseminated its report.

Rata set forth extensive evidence in his Opposition brief demonstrating that Wolfpack did not release its report until the afternoon of February 16, 2021. *See* ECF No. 58 at 5-10; *see also* Supp. Block Decl., ECF No. 59, Exs. B-F. This includes, among other things: (1) that each complaint in the three actions on file (two here in S.D.N.Y. and one in C.D. Cal.) alleged that Wolfpack issued its report on February 16, 2021; (2) Wolfpack's announcement of the release of

its report at 1:53 p.m. on February 16, 2021; (3) EHang's February 16, 2021 press release responding "to the allegations raised in a report by Wolfpack Research *dated February 16, 2021*" (emphasis added); (4) numerous news articles from major sources such as Bloomberg, CNN, and SeekingAlpha that recognized that Wolfpack released its report on February 16, 2021; (5) Rautanen's proposed lead counsel's website that still says Wolfpack released its report on February 16, 2021; (6) Rautanen's proposed lead counsel issued at least 76 press releases providing that Wolfpack released its report on February 16, 2021; and (7) *Rautanen himself wrote in his opening motion that Wolfpack issued its report on February 16, 2021.*

Rata is therefore not subject to any unique defense. He bought his shares before the release and dissemination of the Wolfpack report, and suffered massive losses when that corrective disclosure caused the stock to drop nearly 60% between 1:53 p.m. on February 16, 2021 (when Wolfpack announced the issuance of its report) and the close of trading that same day.

The cases Rautanen cites in support of his argument that Rata is subject to unique defenses are inapposite. *See* Rautanen Opp., ECF No. 60 at 8-9. In *George v. China Auto. Sys., Inc.*, No. 11-cv-7533, 2013 WL 3357170, at *3 (S.D.N.Y. July 3, 2013), the named plaintiffs made numerous post-disclosure purchases, some months after the alleged corrective disclosure, some even after the original complaint was filed, and still some after the amended complaint was filed. Similarly, in *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 134, 136 (S.D.N.Y. 2007), the named plaintiff "made numerous post-class purchases," including "transactions made the day after his motion for lead plaintiff was filed . . . and then a week after his Amended Complaint was filed . . . ." Likewise, in *In re Snap Inc. Sec. Litig.*, No. 17-cv-3679, 2019 WL 2223800, at *2 (C.D. Cal. Apr. 1, 2019), there was no dispute whatsoever that the lead plaintiff movant had purchased the bulk of his shares after the corrective disclosure. These situations contrast sharply with Rata's

purchases of his EHang shares *before* the Wolfpack report was issued and *before* EHang's stock price plummeted after Wolfpack announced the issuance of its report.

### C.  Rautanen's Betrayal to the Class Renders Him Inadequate.

Rautanen's argument that Wolfpack released its report on February 15 is detrimental to the very Class Rautanen seeks to represent. If the Court were to appoint Rautanen to lead this litigation, Rautanen will have bound not only himself, but the entire Class, with his concession that EHang's opening stock price of $123.50 on the morning of February 16 already reflected the public dissemination of the Wolfpack report. If Rautanen is appointed, then the Class faces a serious risk that the only damages it could seek to recover are related to the $0.59 drop between the February 12, 2021 close and the February 16, 2021 – less than 0.5%. *See In re Pfizer Sec. Litig.*, 819 F.3d 642, 659 (2d Cir. 2016) ("fraudulent statements containing the same falsehoods as earlier misrepresentations 'will not cause a change in the stock price . . . because the market has already digested that information and incorporated it into the price."). *See* Rata Opp., ECF No. 58 at 11-16.

Equally grave for the Class, Rautanen's position would allow Defendants to establish that the Wolfpack report "did not affect the market price" of EHang securities, since the drop Rautanen associates with the release of the report was *de minimis*. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408 (2014). This stands in stark contrast to the ***59% plummet*** from the time Wolfpack announced the release of its report at 1:53 p.m. on February 16, when the stock fell from $112.75 to $46.30 at the close – ***a drop of $66.45 per share***.

Rautanen has put his and his lawyers' personal interests – being appointed to lead this case – over the best interests of the Class. Appointment of Rautanen to lead this litigation would raise gargantuan hurdles for class certification and severely restrict (to an almost negligible sum) the

amount of damages that could be recovered for the Class. Rata, on the other hand, is obviously incentivized to attempt to recover the actual significant stock drop that occurred on February 16 for both himself and the Class. Rata is perfectly aligned with the interests of the Class.

### D.  Rautanen has not made a *prima facie* showing of adequacy.

While it is not relevant because Rautanen has failed to rebut the presumption that Rata is the Lead Plaintiff, Rautanen has also failed to make a *prima facie* showing of adequacy. Unlike Rata, who filed a declaration detailing his background, along with his understanding of the case the process of serving as lead plaintiff, ECF No. 40-5, Rautanen has said *nothing*. He did not submit any information about his background, education, experience, or personal history that would allow the Court to make even the initial determination required to appoint him lead plaintiff. Rata Opp., ECF No. 58 at 16-17; *Perez v. HEXO Corp.*, No. 19-cv-10965, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020), *reconsideration denied sub nom. In re HEXO Corp. Sec. Litig.*, No. 19-cv-10965, 2020 WL 5503634 (S.D.N.Y. Sep. 11, 2020) ("given [movant's] failure to provide *any* information regarding his experience in his preliminary motion, the Court questions whether [movant] will meaningfully oversee and control the prosecution of this consolidated class action.").

### II.    CONCLUSION

Rata has the largest financial interest of any lead plaintiff movant in this litigation. He is typical and adequate, and is therefore entitled to the PSLRA's lead plaintiff presumption. Rautanen has not provided the proof required to rebut that presumption, and indeed, is himself inadequate. The Court should therefore appoint Rata as Lead Plaintiff and approve of his selection of Block & Leviton LLP as Lead Counsel.

Dated: May 10, 2021

Respectfully submitted,

*/s/ Jeffrey C. Block*
Jeffrey C. Block
Stephen J. Teti
**BLOCK & LEVITON LLP**
260 Franklin St., Suite 1860
Boston, MA 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
steti@blockleviton.com

*Attorneys for Mr. Rata and*
*Proposed Lead Counsel*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Jeffrey C. Block*
Jeffrey C. Block