UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re EHang Holdings Ltd. Securities
Litigation

Case No. 1:21-cv-01392-GBD

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

September 7, 2022

COOLEY LLP
Sarah M. Lightdale
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
slightdale@cooley.com

Koji F. Fukumura (*pro hac vice*)
Linh K. Nguyen (*pro hac vice*)
Matthew D. Martinez (*pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
kfukumura@cooley.com
lknguyen@cooley.com
mmartinez@cooley.com

Zachary D. Williams (*pro hac vice forthcoming*)
1144 15th Street Suite 2300
Denver, CO 80202
Tel: (720) 566-4000
zwilliams@cooley.com

*Attorneys for Defendants EHang Holdings,
Ltd., Huazhi Hu, Richard Jian Liu, Edward
Huaxiang Xu, and Derrick Yifang Xiong*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION. ...................................................................................................... 1

II.     THE COURT LACKS PERSONAL JURISDICTION OVER MR. XIONG. ................... 2

III.    PLAINTIFF HAS NOT PLEADED FALSITY................................................................ 2

    A.      The AC is a Puzzle Pleading............................................................................ 2

    B.      The Report Does Not Satisfy the PSLRA's Pleading Requirements..................... 3

    C.      The Challenged Statements Are Not Actionable as a Matter of Law.................... 4

        1.      Undisputedly Accurate Statements of Fact............................................... 4

        2.      Corporate Optimism and Opinion Statements. ........................................ 5

        3.      Forward-Looking Statements................................................................... 6

    D.      No Challenged Statement Was False or Misleading When Made. ....................... 6

        1.      EHang's Vehicles.................................................................................... 6

            a.      "Passenger-Grade"........................................................................ 6

            b.      Proprietary Technology. ............................................................... 8

        2.      EHang's Regulatory Approvals. ............................................................... 8

        3.      EHang's Revenues. ................................................................................. 9

        4.      EHang's Research and Development Facility. ......................................... 10

        5.      EHang's Yunfu Facility. ........................................................................ 10

IV.     PLAINTIFF HAS NOT PLEADED ANY INFERENCE OF SCIENTER. ..................... 11

    A.      Plaintiff Has Not Alleged a Valid Motive to Deceive. ...................................... 11

        1.      Mr. Hu's Single Stock Sale Was Not Suspicious Or Unusual................. 11

        2.      Mr. Hu's Pre-Class Period Loan Does Not Suggest Scienter.................. 12

        3.      The Alleged Sale of EHang GZ Equity Does Not Suggest Scienter. ...... 13

    B.      Plaintiff Has Not Alleged Highly Unreasonable Conduct.................................. 13

V.      PLAINTIFF HAS NOT PLEADED LOSS CAUSATION. ........................................... 15

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   615 F. App'x 44 (2d Cir. 2015)........................................................................13

*In re Aphria Inc. Sec. Litig.*,
   2020 WL 5819548 (S.D.N.Y. September 30, 2020)..............................................5

*Bond v. Clover Health Investments, Corp.*,
   2022 WL 602432 (M.D. Tenn. February 28, 2022)...............................................15

*Cheng v. Canada Goose Holdings Inc.*,
   2021 WL 3077469 (S.D.N.Y. July 19, 2021) ......................................................11

*In re China Educ. All., Inc. Sec. Litig.*,
   2011 WL 4978483 (C.D. Cal. Oct. 11, 2011).......................................................14

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
   450 F. Supp. 3d 379 (S.D.N.Y. 2020)..................................................................14

*City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*,
   2022 WL 596679 (S.D.N.Y. Feb. 28, 2022)..........................................................13

*In re Complete Mgmt. Inc. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001)..................................................................15

*In re Curaleaf Holdings, Inc. Sec. Litig.*,
   519 F. Supp. 3d 99 (E.D.N.Y. 2021) ...................................................................7

*Dean v. China Agritech, Inc.*,
   2011 WL 5148598, 4 (C.D. Cal. Oct. 27, 2011)....................................................14

*Fadem v. Ford Motor Co.*,
   352 F. Supp. 2d 501 (S.D.N.Y. 2005)..................................................................2

*Felske v. Hirschmann*,
   2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ......................................................8, 10

*In re Ferroglobe PLC Sec. Litig.*,
   2020 WL 6585715 (S.D.N.Y. Nov. 10, 2020).......................................................9

*Fialkov v. Alcobra Ltd.*,
   2016 WL 1276455 (S.D.N.Y. Mar. 30, 2016) ......................................................14

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Fila v. Pingtan Marine Enter.*,
  195 F. Supp. 3d 489 (S.D.N.Y. 2016)...................................................................................15

*Frederick v. Mechel OAO*,
  475 F. App'x 353 (2d Cir. 2012) .........................................................................................14

*Glaser v. The9, Ltd.*,
  772 F. Supp. 2d 573 (S.D.N.Y. 2011)..................................................................................12

*Gregory v. ProNAi Therapeutics Inc.*,
  297 F. Supp. 3d 372 (S.D.N.Y. 2018).....................................................................................8

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 Fed. Appx. 7 (2d Cir. 2016) .......................3

*In re Hebron Tech. Co. Sec. Litig.*,
  2021 WL 4341500 (S.D.N.Y. Sept. 22, 2021)..........................................................................8

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012)..................................................................................15

*In re Ideanomics, Inc., Securities Litigation*,
   2022 WL 784812 (S.D.N.Y. Mar. 15, 2022) .........................................................3, 4, 11, 15

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)................................................................................................12

*In re Keyspan Corp. Securities Litigation*,
  383 F. Supp. 2d 358 (E.D.N.Y. 2003) ...................................................................................9

*Kraft v. Third Coast Mistream*,
  2021 WL 860987 (S.D.N.Y. Mar. 8, 2021) .......................................................................6, 10

*La Pietra v. RREEF Am., L.L.C.*,
  738 F. Supp. 2d 432 (S.D.N.Y. 2010)....................................................................................7

*Lea v. TAL Educ. Grp.*,
  2019 WL 4688691 (S.D.N.Y. Sept. 25, 2019), *rev'd and remanded*, 837 F.
  App'x 20 (2d Cir. 2020)......................................................................................................15

*Lewy v. SkyPeople Fruit Juice, Inc.*,
  2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012).................................................................14, 15

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
  2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ...................................................................14, 15

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013)..................................................................................14

*In re MF Global Limited Securities Litigation*,
982 F.Supp.2d 277 (S.D.N.Y. 2013).....................................................................................3

*In re MF Global Limited Securities Litigation*,
Case No. 1:11-cv-07866 (S.D.N.Y.), ECF No. 665...............................................................3

*In re Nektar Therapeutics Securities Litigation,*
34 F.4th 828 (9th Cir. 2022) ................................................................................................15

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..................................................................................................14

*Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*,
300 F.Supp.3d 551 (S.D.N.Y. 2018)......................................................................................5

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)..................................................................................................15

*In re Parmalat Sec. Litig.*,
376 F. Supp. 2d 449 (S.D.N.Y. 2005).....................................................................................2

*Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*,
898 F. Supp. 2d 673 (S.D.N.Y. 2012), *aff'd,* 548 F. App'x 16 (2d Cir. 2013).........................7

*Sec. & Exch. Comm'n v. Rio Tinto plc*,
41 F.4th 47 (2d Cir. 2022) .....................................................................................................2

*SEC v. Kelly*,
817 F. Supp. 2d 340 (S.D.N.Y. 2011).....................................................................................2

*South. Cherry St.LLC v. Hennessee Grp. LLC*,
573 F.3d 98 (2d Cir. 2009).....................................................................................................14

*SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*,
2022 WL 2467783 (S.D.N.Y. July 6, 2022) ...........................................................................13

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
2014 WL 7179989 (S.D.N.Y. Dec. 10, 2014) ..........................................................................2

*Zhong Zheng v. Pingtan Marine Enter.*,
379 F. Supp. 3d 164 (E.D.N.Y. 2019) ...................................................................................15

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

**Other Authorities**

17 C.F.R. § 229.403(b) ....................................................................................................................12

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| **AAV** | Autonomous aerial vehicle |
| **AC** | Amended Class Action Complaint (ECF No. 79) |
| **ADS** | American depositary shares |
| **CAAC** | Civil Aviation Administration of China |
| **Class Period** | December 12, 2019, through February 16, 2021 |
| **CoA** | Certificate of Airworthiness issued by the FAA |
| **Defendants** | EHang, Huazhi Hu, Richard Jian Liu, Edward Huaxiang Xu, Derrick Yifang Xiong |
| **DOJ** | Department of Justice |
| **EASA** | European Aviation Safety Agency |
| **EH116** | The EHang 116 |
| **EH184** | The EHang 184 |
| **EH216** | The EHang 216 |
| **EH216F** | The EHang 216F |
| **EHang** | EHang Holdings Limited |
| **EU** | European Union |
| **FAA** | United States Federal Aviation Administration |
| **Kunxiang** | Shanghai Kunxiang Intelligent Technology Co., Ltd. |
| **MW** | Material weakness |
| **PSLRA** | Private Securities Litigation Reform Act |
| **Report** | Wolfpack Research report titled "EHang: A Stock Promotion Destined to Crash and Burn," dated February 16, 2021 |
| **SEC** | United States Securities and Exchange Commission |
| **TCCA** | Transport Canada Civil Aviation |
| **UAM** | Urban air mobility |
| **UAV** | Unmanned aerial vehicle |
| **UK** | United Kingdom |
| **VIE** | Variable Interest Entity |

I.    INTRODUCTION.

Defendants' Motion demonstrated, in careful detail, that the AC is just an unsubstantiated short-seller report that Plaintiff has repackaged as securities fraud. In response, the Opposition rehashes the AC's conclusory allegations, cites inapposite cases, and maintains that the challenged statements are—when divorced from all context—misleading. But frank and accurate disclosures do not become fraudulent on Plaintiff's say-so. Nor can Plaintiff rebut grounds for dismissal by ignoring them. As described below and in the Motion, the AC is defective to its core.

First, the Court does not have personal jurisdiction over Mr. Xiong because he did not make any of the challenged statements.

Second, the AC does not adequately allege a false or misleading statement. Even if Plaintiff could rely on the unreliable and uncorroborated Report (he cannot), the AC does not allege facts adequate to show that any statement was false or misleading when made. For instance, Plaintiff's chief claim—that use of the term "passenger-grade" deceived investors into believing that EHang had received regulatory approval to engage in passenger operations—is unsupported and belied by EHang's SEC filings and press releases, which clearly disclosed that EHang was engaged in *trial* passenger operations and that no company has received approval for regular passenger operations.

Third, the AC fails to raise any inference of scienter, let alone a strong one. Plaintiff has not alleged that any Defendant had a motive to defraud. The single stock sale Plaintiff leans on is not suspicious—it represented *less than 1% of a single insider's holdings*. Neither the alleged loan nor the VIE transaction is alleged to have resulted in any sort of benefit to Mr. Hu during or after the Class Period. And as for recklessness, Plaintiff does not identify a single particularized fact—*e.g.*, documents, meetings, or confidential witnesses—suggesting any Individual Defendant intended to mislead when he spoke. Instead, Plaintiff invokes access to information and the core operations doctrine. Neither suffices to obscure the AC's lack of particularized facts showing Defendants knew of information that contradicted their public statements.

Last, Plaintiff has not adequately alleged loss causation. The Report's open speculation about and negative "opinion" of EHang does not amount to a corrective disclosure.

-1-

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER MR. XIONG.

Plaintiff argues that the Court has jurisdiction over Mr. Xiong, a foreign national who did not make or sign any SEC filing containing any statement challenged in the AC (Mot. at 12), because Mr. Xiong purportedly made false statements on social media.[1] (Opp. at 9-10.) However, *the AC does not challenge any such social media statements* and Plaintiff cannot rewrite the AC now. *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005); *see also* Mot. at n.13.[2] Nor can Plaintiff conjure jurisdiction over Mr. Xiong by invoking, with no supporting facts, Rules 10b-5(a) and (c).[3] (Opp. at 9.) Pleading scheme liability requires facts showing that he engaged in "an inherently deceptive act []distinct from an alleged misstatement." *SEC v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011); *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, 2014 WL 7179989, at *5 (S.D.N.Y. Dec. 10, 2014) (Daniels, J.) (no scheme liability where allegations rest on same misrepresentations and omissions as Rule 10-5(b) claim). "*Lorenzo* [*v. SEC*, 139 S. Ct. 1094 (2019)] did not announce a rule contravening this principle." *Sec. & Exch. Comm'n v. Rio Tinto plc*, 41 F.4th 47, 55 (2d Cir. 2022) (cautioning against an "overreading" of *Lorenzo*).

## III.    PLAINTIFF HAS NOT PLEADED FALSITY.

### A.    The AC is a Puzzle Pleading.

Replete with lengthy block quotes, inconsistent use of bold and italics, and confusing cross-references, the AC is a mess. (Mot. at 13.) The Opposition reveals that even Plaintiff is unclear on which statements he is challenging and why. For instance, Plaintiff faults Defendants for noting that the statements attributed to Dr. Moore (a former employee of an EHang competitor) in the Report do not touch on whether EHang "proprietarily developed a complete suite of intelligent aerial logistics solutions," as if the AC does not challenge that statement based on Dr. Moore's purported observations. (Opp. at n.12, 22-23.) It does. (¶¶156-57.) Plaintiff also faults Defendants

---

[1] Unless otherwise noted, "Mot." refers to Defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss (ECF No. 90), "Opp." refers to Plaintiff's Opposition to Defendants' Motion to Dismiss (ECF No. 95), "¶" references are to the AC, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] Unlike in *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 449 (S.D.N.Y. 2005), the AC does not allege that any SEC filing signed by Mr. Xiong contains false or misleading statements.

[3] Plaintiff effectively concedes that Mr. Xiong cannot be liable under Rule 10b5(b) because he is not the "maker" of any challenged statement. (Mot. at n.13.)

for analyzing falsity allegations regarding statements to which Plaintiff now disclaims any challenge. (Opp. at n.18.) But the AC's block-quoting and inconsistent bolding make it impossible to determine which statements he does in fact challenge.[4] (*E.g.*, ¶¶106-07, 137-41, 147-48; *infra* at III.C.3.) Neither the Court nor Defendants can be expected to sort out the AC.[5]

### B. The Report Does Not Satisfy the PSLRA's Pleading Requirements.

Courts regularly dismiss private securities litigation based on unsubstantiated and unreliable short-seller reports. *E.g.*, *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 159 (S.D.N.Y. 2015), *aff'd*, 649 Fed. Appx. 7 (2d Cir. 2016). Plaintiff argues that the Report is reliable because his "investigation" corroborated it. (Opp. at 13.) But a simple comparison of the Report and Plaintiff's alleged investigation belies this:[6]

| Report Allegation | Plaintiff's Alleged Investigation |
|---|---|
| EHang's relationship with its customer Kunxiang is a sham. (¶68.) | Plaintiff corroborates no part of this allegation, although it is prominently featured in and central to the Report. (*See generally* ¶¶76-85.) |
| EHang's headquarters/main manufacturing facility in Guangzhou lacks manufacturing equipment or employees. (¶71.) | Plaintiff's investigator concluded EHang did not have a visible business presence at EHang GZ's ***registered address*** (allegedly located at Room 5986, 5/F, No. 1021, Gaopu Road, Tianhe District, Guangzhou City), not EHang's headquarters/main manufacturing facility (located at Building C, Yixiang Technology Park, No.72 Nanxiang Second Road, Huangpu District, Guangzhou City). (¶78; Ex. 2 at 1; Mot. at n.29.). |
| EHang's R&D center is a guarded and gated facility located near an abandoned amusement park that lacks any of the equipment necessary to test AAVs. (¶9.) | Plaintiff's investigator confirmed that EHang's R&D facility is located at an abandoned amusement park but said nothing about the guarded and gated facility that Wolfpack's investigator found there. (¶77; Mot. at 24.) |
| Dr. Moore alleged, based on his inspection of the EH216 on an unspecified date, that the EH216 uses "hobby-grade" motors, EHang has an anemic R&D budget, and he doubts that the EH216 can ever be certified to carry passengers in the US. (¶73.) | Plaintiff does not allege that he confirmed with Dr. Moore the statements that are attributed to him in the Report. Nor does Plaintiff allege that his investigator inspected the EH216 or even spoke to anyone who has. (*See generally* ¶¶76-85.) |

---

[4] Some lengthy block quotes in the AC contain no bolding at all, or only a few bolded words along with paragraphs of unrelated information. (*E.g.*, ¶¶106, 144, 147, 148.)

[5] *In re MF Global Limited Securities Litigation*, 982 F.Supp.2d 277 (S.D.N.Y. 2013) is inapposite because the complaint in that case was consistently organized, unlike the AC. (Opp. at 12; *see In re MF Global Limited Securities Litigation*, Case No. 1:11-cv-07866 (S.D.N.Y.), ECF No. 665.)

[6] *In re Ideanomics, Inc., Securities Litigation* is inapplicable because, there, the plaintiffs' investigation corroborated "the ***majority*** of the [short-sellers'] claims." 2022 WL 784812, at *8 (S.D.N.Y. Mar. 15, 2022) (Daniels, J.).

| As of the Report's publication in February 2021, EHang had not built its E-Port in Hezhou. (¶6.) | Plaintiff searched public records, found plans to begin construction of the E-Port between June and December 2021, and alleges merely that "whether the E-Port was ever constructed is unclear."[7] (¶79.) |
|---|---|
| EHang's proposed new manufacturing facility at Yunfu was not "built" by EHang but was rented space lacking manufacturing equipment or employees. (¶133.) | Plaintiff corroborates no part of this allegation. (*See generally* ¶¶76-85.) |
| EHang described flight approvals it received for the EH216 differently in Chinese and English press releases. (¶8, 14, 105, 165-66.) | Like Wolfpack, Plaintiff apparently translated only the titles of Chinese press releases, not the actual documents. (¶¶90-91.) |

EHang's 2021 Form 20-F does not corroborate the Report. (Opp. at 7.) EHang disclosed during the Class Period that its revenues "have been" and "are expected to be mainly derived from sales of passenger-grade AAVs for ***testing, training, and demonstration purposes***," and that "[b]efore regulatory approvals for the commercial operations of our passenger grade AAVs have been obtained in China and/or other relevant jurisdictions, ***customer demand will likely be limited in volume***." (Ex. 3 at 82; Ex. 1 at 76; Ex. 2 at 84) The statements from EHang's 2021 Form 20-F are similar and were hardly revelatory. Indeed, Plaintiff does not and could not represent that the market reacted at all to the 2021 Form 20-F (which is not an alleged corrective disclosure).[8]

### C.     The Challenged Statements Are Not Actionable as a Matter of Law.

#### 1.      Undisputedly Accurate Statements of Fact.

Plaintiff does not address most of the challenged statements that Defendants identified as accurate. (*E.g.*, ¶96 ("The operating systems installed on each AAV consist of an autopilot and flight control system, communication systems, a battery management system and a safety management system."), ¶98 ("As of September 30, 2019, our 125- member research and product development team represented more than half of our total employees."); ¶¶137-38, 142, 144, 147, 152, 156; *see* App. B.) Nor does Plaintiff identify particularized facts undermining any challenged

---

[7] *See Ideanomics*, 2022 WL 784812, at *8 (plaintiff did not adequately allege that the MEG Center in Qingdao "had *not* been renovated," where his investigator was merely "unable to confirm th[at] fact[]." (emphasis original)).

[8] Plaintiff argues that the Report is reliable because it has no "demonstrable errors" and contains videos and pictures. (Opp. at 14.) The Report has clear errors. For example, it was wrong that EHang's press releases "omit key flight approval limitations such as 'short-term,' 'one-time,' 'trial,' or 'test.'" (Mot. at 22.) Also, Plaintiff does not dispute that Wolfpack's video of EHang's main facility in Guangzhou was heavily edited and shows only a small portion of the facility. (Mot. at n.29.) Moreover, the Report's only relevant pictures are stills from the edited video, a blurry picture from a motor company's website compared to a picture of a motor that could be from any of EHang's AAVs (there is no way the reader can tell), a picture of the outside of EHang's R&D facility, and a purported undated satellite image of the same facility. None of these pictures demonstrate the reliability of the Report.

statement or rendering it false or misleading when made. (*Infra* at III.D; Mot. at 17-27.)

### 2.    Corporate Optimism and Opinion Statements.

Plaintiff acknowledges in the Opposition, as he did in the Complaint, that the term "passenger-grade" has no fixed industry definition.[9] (¶87; Opp. at 17.) Plaintiff also does not identify any pleaded facts showing any investors were confused by EHang's use of the term "passenger-grade" to describe those of its AAVs that were undisputedly designed to be capable of carrying a human passenger; the AC does not cite a single analyst report or news article commenting on the Report or questioning EHang's use of "passenger-grade." When read in the context of EHang's numerous disclosures regarding its lack of regulatory approval for regular passenger operations and "trial" flight approvals, no reasonable investor could have been misled by the term "passenger-grade" in the manner Plaintiff suggests.[10] (*Infra* at III.D.1-2; Mot. at 5; App. A.) As for "regulatory breakthrough"[11] and "milestone," Plaintiff does not dispute that courts routinely hold such terms to be immaterial corporate optimism. (Opp. 16-17, 20, 27; Mot. at 15.)

Plaintiff argues that Defendants' opinions were actionable because they omitted facts that contradicted what a reasonable investor would take from the statements. (Opp. at 26.) For example, Plaintiff argues that "we believe we are the first in the world to launch passenger-grade AAVs" was misleading because EHang omitted that the "launch" was a singular test flight that had no passengers. (Opp. at 26-27.) But, when read in context, that statement obviously referred to EHang being the first to begin selling AAVs capable of carrying passengers, not to a specific flight. (Ex. 3 at 2.) Nor can Plaintiff's argument be squared with clear disclosures of the limited scope of EHang's operations and approvals. (Mot. at 19-22.) In any case, Plaintiff does not argue that Defendants did not believe their stated opinions or knew contradictory facts. (Mot. at 15-16.)

---

[9] Plaintiff's attempt to distinguish *Okla. Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F.Supp.3d 551, 570 (S.D.N.Y. 2018) misses the point. (Opp. at 21.) The issue is not whether it can be verified that EHang never received regulatory approval to carry passengers for a fee—EHang never claimed that it did—but whether the term "passenger-grade" has a defined meaning in the AAV industry such that its use might constitute securities fraud.

[10] *In re Aphria Inc. Sec. Litig.*, 2020 WL 5819548 at *8–9 (S.D.N.Y. September 30, 2020) (Daniels, J.) does not help Plaintiff. There, this Court held that describing an asset as "world class" signified it was, "at a minimum, operational," but the assets there were "largely inoperable." Here, Plaintiff has not alleged the EH216 was incapable of carrying passengers.

[11] Plaintiff asserts that Defendants' claims of "regulatory breakthroughs" were used to describe "regulatory approvals . . . for commercial operations to carry passengers." (Opp. at 20.) Defendants never made any such assertions.

### 3.   Forward-Looking Statements.

Plaintiff does not dispute that the statements regarding the Yunfu facility and E-Port, and other statements identified by Defendants, are forward-looking. (Opp. at n.19; Mot. at 16-17.) Nor does he contend that any forward-looking statements were unaccompanied by cautionary language or that Defendants lacked a reasonable basis for them. Rather, Plaintiff claims that he did not challenge the statements identified as forward-looking in the Motion even though they were placed in bolded font or otherwise identified as challenged in the AC. (Opp. at n.19; ¶¶132-33, 116, 156.) This is further illustration that the AC is a puzzle pleading. (*See supra* at III.A.)

### D.   No Challenged Statement Was False or Misleading When Made.

#### 1.   EHang's Vehicles.

##### a.   "Passenger-Grade"

Plaintiff argues that use of the term "passenger-grade" was misleading because investors would understand it to mean that EHang had obtained regulatory approval for regular passenger operation of the EH216. (Opp. at 16.) Plaintiff's arguments make no sense.

First, Plaintiff argues that "passenger-grade" was confusing because Defendants ***mentioned*** regulatory approvals in the documents containing that phrase. (Opp. at 17, 19.) But EHang's press releases and SEC filings were also clear that the Company's regulatory approvals were ***limited***. (Mot. at 21-22.) For example, in the December 12, 2019 Prospectus, the Company described its AAVs as "passenger-grade." (Ex. 3 at 2, 3, 5, 8, 71.) In the ***very same document***, EHang also disclosed that it was "not aware of any operator having been granted all required approvals of passenger-grade AAVs in China or the United States." In light of this accompanying disclosure, reasonable investors reading the Prospectus could not have been confused. When read in the context of the "universe of disclosed information" as the law requires, *Kraft v. Third Coast Mistream*, 2021 WL 860987, at *13 (S.D.N.Y. Mar. 8, 2021), "passenger-grade" could mean only that the EH216 was capable of carrying passengers.[12]

---

[12] Plaintiff's challenge to EHang's statements that it had "commercialized" its AAVs is likewise unavailing. (Opp. at 19.) Plaintiff never explains why "commercialization" must refer only to regular passenger operations for a fee. Nor does he plead facts to show that any investor interpreted it that way. The only reasonable interpretation of EHang's

Recognizing that EHang's fulsome disclosures gut his claim, Plaintiff tries to dismiss them as stale. (Opp. 17-18.) Plaintiff cites no authority for this, and it is well settled that "reasonable investor[s]" are charged with knowledge of the risks disclosed in a company's SEC filings, and particularly in its prospectus, when evaluating statements made subsequently. *La Pietra v. RREEF Am., L.L.C.*, 738 F. Supp. 2d 432, 441 (S.D.N.Y. 2010) ("[A] prospectus [is] the single most important document and perhaps the primary resource an investor should consult in seeking information on an investment's risks."); *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 108 (E.D.N.Y. 2021) (collecting cases and holding "the Company's on-point public disclosures are fatal to plaintiffs' claims, and those claims cannot be revived merely because the disclosures were not repeated in every press release issued by the Company"). In fact, the *La Pietra* court charged the plaintiffs with knowledge of the risk disclosures in prospectuses filed "***four to five years*** before the class period began." 738 F. Supp. 2d at 441 (dismissing complaint). In any case, EHang repeated the disclosure in all of its Forms 20-F. (Ex. 1 at 5, 45, 52; Ex. 2 at 5, 12, 13.)

Nor did any press release contradict EHang's risk disclosure. (Opp. at 17-18.) Plaintiff's challenges to the press releases rest on the false premise that they omitted qualifiers about the scope of EHang's flight approvals. The properly incorporated documents belie this. (Mot. at 21-22; *infra* at III.D.2.) For example, the May 27, 2020 release announced the CAAC's approval of the EH216 for "trial air ***logistics*** service . . . to transport ***cargo***." (Opp. at 18; ¶¶119-20; Ex. 17.) *See Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 690 (S.D.N.Y. 2012) (dismissing claims "based on a misconstruction of the documents"), *aff'd,* 548 F. App'x 16 (2d Cir. 2013). All EHang press releases challenged by Plaintiff were similarly clear.

Finally, Plaintiff's argument that EHang's disclosure covered only the U.S. and China is a red herring. Mr. Hu's statements about flight approvals in Europe were obvious allusions to releases stating the approvals were for EH216 ***trial*** flights. (Opp. at 18-19.) For example, the July 29, 2020 press release states that "[w]ith the [Special Flight Operations Certificate], ***trial*** flights of

___
use of the word "commercialization" in light of its disclosures is that EHang had begun selling AAVs to customers. (Mot. at 4, 7, 22; s*ee, e.g*., Ex. 3 at 12 ("We are currently ***commercializing*** our AAVs and air mobility solutions and have just started accepting orders for our AAVs and delivering them to customers ***for testing purposes***.").)

EHang 216 AAVs can be routinely conducted in Québec" (Ex. 18). EHang never claimed it had received regulatory approval to engage in regular passenger operations in Québec (or elsewhere).[13]

### b.      Proprietary Technology.

Plaintiff maintains that "proprietarily developed" was misleading because the EH216's "motors were 'off the shelf and hobby grade.'" (Opp. at 15.) This allegation blindly repeats Dr. Moore's statements from the Report, which do not pass muster under the PSLRA.  Plaintiff does not know *when* Dr. Moore supposedly inspected the EH216. (Opp. at 22–23 (contending it occurred sometime between 2018 and 2021). "[A]morphous … time periods are not pled with the requisite specificity." *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 409 (S.D.N.Y. 2018).[14] There is no indication that Plaintiff's counsel "personally spoke with, or even attempted to reach" Dr. Moore to confirm his statements, which renders them unreliable. *See In re Hebron Tech. Co. Sec. Litig.*, 2021 WL 4341500, at *19 (S.D.N.Y. Sept. 22, 2021). The Report acknowledges that Dr. Moore's observations are "opinions" and not necessarily accurate. (Ex. 37 at 32.) And neither the Report nor the AC attempts to define or explain the term "hobby-grade," or its purported significance to investors in the AAV industry. Finally, Plaintiff lacks any support for the implicit assertion that "proprietary" refers only to EH216's motor and not its other features, like in-flight operating systems and command-and-control infrastructure.[15] (*See* Mot. at 20.)

### 2.      EHang's Regulatory Approvals.

Plaintiff insists that several statements from EHang's press releases gave the false impression that the EH216 had been approved for regular passenger operations.[16] But he ignores that the press releases issued on January 8, March 5, May 27, July 29, and December 14, 2020

---

[13] Plaintiff has abandoned his previous argument that "passenger-grade" was misleading because EHang had not obtained a COA in the U.S. *See Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012) .

[14] Plaintiff claims that because EHang did not announce any significant changes or modifications to the EH216 during this three-year time period, "it may be inferred that [Dr. Moore] inspected the EH216 at issue." (Opp. at 22.) But the AC does not allege this. And nothing in the AC suggests that changing the motor would be a significant modification, or that EHang (or any AAV company) would necessarily announce such a change.

[15] Speculation that the EH216 could not be capable of autonomous flight given EHang's R&D spend (Opp. at n.16) is insufficient to plead falsity as well. *See Hebron.*, 2021 WL 4341500, at *19; Mot. at 20-21.

[16] The Opposition does not dispute that the Report and Plaintiff's alleged investigation was limited to translating only the titles of the press releases, and that as a result, Plaintiff lacks a basis to reasonably infer that the Company's Chinese press releases differed substantively from its English-language versions. (Mot. at n.23.)

were all replete with contrary descriptions like "trial," "non-passenger," and "for the purposes of testing and certification." (Mot. at 21-22.)

For example, Plaintiff maintains that EHang's January 8, 2020, announcement that it received "flight approval from the [FAA]" for its "first-ever U.S. trial flight of its two-seater passenger-grade AAV" was misleading because the trial flight was a non-passenger flight conducted under the control of a ground crew.[17] (Opp. at 15; ¶104.) But the statement was true—it was the first time EHang had received approval from the FAA for a "trial" flight of the EH216—and the press release disclosed that it was a "non-passenger" flight, (Ex. 12). *See In re Ferroglobe PLC Sec. Litig.*, 2020 WL 6585715, at *8 (S.D.N.Y. Nov. 10, 2020) (statements must be analyzed "in light of all [their] surrounding text"). That there were limitations on this "trial" flight requiring takeoff and landing to occur at a specific time and place cannot render the statement misleading, nor would it be surprising.  (*See* Ex. 12; Opp. at 15.) That the EH216 remained under the control of a ground crew for that particular flight does not show the AAV to be incapable of autonomous flight, and Plaintiff cannot point to a single well-pled fact to show that it was.[18] (Mot. at 21-22.)

### 3.    EHang's Revenues.

The Report claims that the supposed "discrepancies" related to the Kunxiang transactions are the "most outrageous" (Ex. 37 at 19), yet the Opposition hardly gives them any airtime (Opp. at 23-24). No doubt this is because—as the Motion explained—the Kunxiang allegations are unreliable on multiple levels. (Mot. at 22-24.) Plaintiff took the allegations from the Report without corroborating them. The allegations come from an anonymous Kunxiang "finance manager" who is not described with particularity. And none of Plaintiff's allegations about Kunxiang or the

---

[17] Plaintiff also faults EHang for using the phrase "long-term" to describe the flight approvals it received in Austria and Norway (¶¶4, 106, 150; Opp. at 1, 6); but the press releases describing both approvals were more than clear that the approvals were for "trial" flights and operations. (Mot. at 6, 8, 12-22; Exs. 13, 22.)

[18] The Opposition argues that Defendants' reliance on *In re Keyspan Corp. Securities Litigation*, 383 F. Supp. 2d 358, 377–78 (E.D.N.Y. 2003), is misplaced because EU regulations regarding AAV passenger operations did not receive "wide-spread" attention. (Opp. at n.13.) *Keyspan* is clear: "***securities laws require disclosure only of information that is not otherwise in the public domain***." *Id*. Moreover, the *Keyspan* court concluded that once defendants notified investors that the company would be subject to a new set of regulations, they were "not required to provide investors with a summary of the [regulations]." *Id*. Here, EHang described applicable EU regulations and their impact on the Company in its Prospectus (Ex. 3 at 82–85) and summarized them in the 2019 20-F (Ex. 1 at 53–54). In any event, the Opposition does not contest that EHang's statement about its cooperation agreement with the City of Seville cannot be misleading for the reasons alleged by Plaintiff. (Mot. at 21; *cf.* Opp. at 16.)

transactions show that the transactions lacked economic substance. (*Id*.) In response, Plaintiff says the Kunxiang transactions must have been bogus based on EHang's disclosure of accounts receivable. But the PSLRA requires much more than "speculation alone." *Kraft*, 2021 WL 860987, at \*13. Plus, Plaintiff ignores that EHang disclosed to investors the correct Kunxiang sales agreement and that the pandemic delayed collection of its accounts receivable.

### 4.      EHang's Research and Development Facility.

Based on the Report, Plaintiff insists that EHang's references to its R&D facility in Guangzhou were misleading. (Opp. at 24.) But the Report only contains photos of an entrance to the facility with an EHang sign and an ***undated*** satellite image of what was supposedly behind the gate. (Ex. 37 at 17–18.) While Plaintiff's investigation confirmed the location of the facility, it says nothing about the "guard[ed]" and "gate[d]" nature of it referenced in the Report. (Ex. 37 at 17; Opp. at 24.) Plaintiff does not dispute that he cannot rely on an undated satellite image to allege falsity with the requisite particularity. (Mot. 24-25.) Further, Plaintiff never states what, in his view, is required to constitute a R&D facility. How many buildings? How many pieces of equipment? What types of equipment? In any event, Plaintiff concedes that none of the challenged statements about EHang's R&D, which do not discuss EHang's R&D facility, can be misleading for allegedly omitting information about the facility.[19] *Felske*, 2012 WL 716632, at \*3; *see* Mot. at 25.

### 5.      EHang's Yunfu Facility.

The Report's allegations about the Yunfu facility are unreliable and uncorroborated, EHang's statements about it were largely forward-looking and as such inactionable, and Mr. Hu did not suggest the Yunfu facility was already up and running.  (*Supra* at III.C.3; Mot. at 25-27.)

Plaintiff's challenge to Mr. Hu's December 3, 2020 statement ("we have started to ramp up our production capacity with the new facility in Yunfu") is another semantic sleight of hand.[20] (Opp. at 25; Mot. at n.28.) Mr. Hu referred to ramping up "production capacity ***with***" the Yunfu

---

[19] Plaintiff has apparently abandoned his allegations about EHang's Chinese patents too. (*See* ¶145; Mot. at 24-25.)
[20] Plaintiff has also abandoned his claim of a material difference between "constructing" and "retrofitting." (*See* ¶174; Mot. at n. 28.)

facility—not "*at*" the facility, or "*in*" the facility. This reflects that the Yunfu facility was part of EHang's broader plan to ramp up production "*capacity*," not that production was underway there.[21] (Mot. at 27.) Plaintiff now argues that Mr. Hu "reinforce[d] the false claims there is both genuine and increased demand for EHang's AAVs and that EHang was beginning to build AAVs to meet that demand." (Opp. at 26.) But, in Plaintiff's words, "that is simply not what he said." (Opp. at 25.) In any event, Mr. Hu expressly told investors on December 3, 2020, that "the Yunfu factory is expected to *start* production in the first half of 2021."[22] (Ex. 42 at 6.) No investor could reasonably have believed that production was already underway at the Yunfu facility at that time.

## IV.    PLAINTIFF HAS NOT PLEADED ANY INFERENCE OF SCIENTER.

Plaintiff acknowledges that the AC must plead a "strong" inference of scienter that is "as cogent and compelling as any opposing inference of nonfraudulent intent." (Opp. at 27.) Without a motive to defraud or facts showing highly unusual conduct, Plaintiff does not come close.

### A.    Plaintiff Has Not Alleged a Valid Motive to Deceive.

#### 1.    Mr. Hu's Single Stock Sale Was Not Suspicious Or Unusual.

Plaintiff does not dispute that the mere fact of a stock sale cannot establish scienter. (Mot. at 28). Yet that is all he has pleaded: one stock sale by one Defendant, representing *less than 1% of his holdings*. (¶183.) Plaintiff has not pleaded a single fact suggesting that Mr. Hu's minuscule stock sale was suspicious, nor could he. *See, e.g.*, *Cheng v. Canada Goose Holdings Inc.*, 2021 WL 3077469, at *11 n.5 (S.D.N.Y. July 19, 2021) (sales of 22.5%, 19.5%, and 17.4% not suspicious). The timing of Mr. Hu's sale—"during 2020"—is also not suspicious because it is not pleaded with particularity or tied to any challenged statement. (Opp. at 32; ¶183.)

Plaintiff tries to wave aside the small size of Mr. Hu's sale as "irrelevant" because the Report "caught [Defendants] by surprise." (Opp. at 33.) But of course, "the percentage[] of

---

[21] By contrast, in *Ideanomics*, this Court found statements the MEG center "had 'officially launched'" to be misleading where the center had not yet opened. 2022 WL 784812, at *8 (S.D.N.Y. Mar. 15, 2022).

[22] The Motion inadvertently stated that EHang's third quarter presentation indicated construction of the Yunfu facility would be complete in the second half of 2021 instead of in the first half. (Opp. at 26; *but see* Mot. at 8 (stating that the third quarter presentation disclosed that Yunfu would start production "in the first half of 2021").) Regardless, the point remains the same: on the day that Mr. Hu made the challenged statement about the Yunfu facility (December 3, 2020), he also clearly stated that production was not expected to begin at the facility until a future time.

holdings sold" bears on "[w]hether trading was unusual or suspicious." *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 587 (S.D.N.Y. 2011). The AC does not allege that any Defendant intended to sell more but for the Report. And the months-long run-up of EHang's stock price before the Report supplied a perfect opportunity for Defendants to dump their supposedly worthless holdings[23]—but per the AC, none did. These facts support no inference of scienter at all, much less a strong one.

### 2. Mr. Hu's Pre-Class Period Loan Does Not Suggest Scienter.

A year before EHang went public (thus a year before the Class Period), Mr. Hu allegedly obtained an RMB 50 million loan in exchange for pledging 1,679,557 EHang ordinary shares. (¶¶84, 180.) Plaintiff argues that this "motived [*sic*]" Mr. Hu to take EHang public and inflate the stock price "so he could obtain . . . the RMB 50 million loan." (Opp. at 32.) But this makes no sense because the AC alleges that Mr. Hu "secure[d] [the] loan" in December 2018. (¶¶84, 180.) Perhaps recognizing this, Plaintiff pivots to argue that Mr. Hu was motivated to "keep the stock price high" so that the collateral would "still [have] value." (Opp. at 32.) But the AC alleges that Mr. Hu set the number of shares pledged as collateral in 2018. (¶¶84, 180.) And Plaintiff does not allege facts showing that the terms or amount of the loan were connected in any way to the share price.[24] In other words, the AC does not allege facts to show that inflating the stock price in 2020 would have given Mr. Hu any "concrete and personal benefit," meaning the loan could not have "result[ed] from the fraud." *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

Plaintiff next suggests that Defendants violated Item 403 of Regulation S-K by failing to disclose in EHang's IPO that Mr. Hu pledged his shares as security for the loan. (Opp. at 32 (citing 17 C.F.R. § 229.403(b).) "Courts have repeatedly concluded that Regulation S-K does not apply

---

[23] From July through September 2020, EHang's stock price hovered around $8. It began to markedly rise in the fall, closing at $14.62 on November 30. It then spiked in earnest, quadrupling in under two months (to $61.39 on January 19, 2021) and then doubling yet more in under a month. On February 12, 2021— the last trading day before Wolfpack issued the Report—EHang's stock price closed at an all-time high of $124.09. (Ex. 43.) This eyebrow-raising trajectory is not mentioned in the AC at all, much less tethered to any of the alleged misstatements. Defendants did not "concede" that Wolfpack is not under federal investigation. (Opp. at 7.) Rather, Defendants noted news reports— which, as Plaintiff does not contest, the Court may judicially notice—that many short-sellers have received DOJ subpoenas focused on potentially manipulative trading. (Mot. at 10-11.) Plaintiff does not purport to have investigated whether Wolfpack received one.

[24] Plaintiff's statement that the loan agreement was "carried out" (whatever that means) when EHang went public is meaningless. (Opp. at 32.) The AC does not plead that the loan was contingent on EHang going public at all.

to a foreign corporation" like EHang. *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt Benckiser Grp. PLC*, 2022 WL 596679, at *22 (S.D.N.Y. Feb. 28, 2022); *see* ¶ 21. Regardless, "it is well-established that [a]llegations of a violation of . . . SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim." *SuperCom, Ltd. v. Sabby Volatility Warrant Master Fund Ltd.*, 2022 WL 2467783, at *4 (S.D.N.Y. July 6, 2022).

### 3.      The Alleged Sale of EHang GZ Equity Does Not Suggest Scienter.

Plaintiff alleges that Mr. Hu (through a EHang subsidiary) provided two EHang employees with an interest-free loan so they could purchase his and Mr. Xiong's equity of EHang GZ, a VIE controlled by EHang. (¶¶185-87.) Plaintiff's version of the transaction never happened. Mr. Hu and Mr. Xiong transferred their status and rights as "nominee shareholders." (Ex. 2 at 16.) And the loaned money was a "capital injection [for] the VIE." (Ex. 1 at 59.) As such, neither Mr. Hu nor Mr. Xiong received a benefit. (Mot. at 29-30.) Plaintiff's Opposition does not contest this.[25]

Even accepting Plaintiff's mischaracterization of the VIE transaction, his theory fails for two reasons. First, the AC does not plead that Mr. Hu "controlled" the two EHang employees or even encouraged them to buy the VIE's equity. (Opp. at 32-33; Mot. at 30; *cf.* ¶187 (Mr. Hu was "on both sides of this transaction") And second, the AC fails to tie the transaction to any challenged statement or EHang's allegedly "inflated" ADS price.  (Mot. at 30.) Plaintiff argues that the price of EHang GZ's equity must have been inflated by the misstatements. (Opp. at 32-33.) The AC does not allege this, and it is pure speculation.

### B.      Plaintiff Has Not Alleged Highly Unreasonable Conduct.

As Plaintiff admits, establishing scienter via recklessness requires alleging "highly unreasonable" conduct that "represents an extreme departure from the standards of ordinary care." (Opp. at 27-28.) His hodgepodge of see-what-sticks allegations falls well below this high bar.

First, Plaintiff can cite no authority for the novel proposition that "intent to deceive" may

---

[25] Plaintiff cites *Acticon AG v. China N. E. Petroleum Holdings Ltd.* for the proposition that "looting" company funds can establish scienter. (Opp. at 33 (citing 615 F. App'x 44, 45 (2d Cir. 2015).) The defendant in *Acticon* secretly "engag[ed] in unauthorized transfers of company funds" to himself. The transaction here was disclosed, authorized, and did not result in payment to any Individual Defendant. (Mot. at 29-30.)

be strongly inferred from allegations of differences in the ***titles*** of press releases published in multiple languages. (Opp. at 28-29.) None of the differences Plaintiff relies on are meaningful or misleading. (*Supra* at n.16.) More importantly, the AC does not allege that any Individual Defendant (1) drafted the press releases; (2) had any role in translating them; (3) knew of any of the differences in their phrasing; or (4) knew that those differences were false or misleading.[26] The Court cannot infer scienter without such facts.[27] *South. Cherry St. LLC v. Hennessee Grp. LLC,* 573 F.3d 98, 113 (2d Cir. 2009); Mot. at 32.

Invoking the core operations doctrine, Plaintiff next argues that Defendants must have known EHang's facilities were "empty" and that EHang used "hobby-grade motors."[28] (Opp. at 30.) Even assuming *arguendo* that the core operations doctrine survived the PSLRA,[29] it is not "an independent basis of scienter." *Fialkov v. Alcobra Ltd.*, 2016 WL 1276455, at *7 (S.D.N.Y. Mar. 30, 2016) (Daniels, J.). Because Plaintiff fails to plead any of the hallmarks of scienter—*e.g.*, confidential witnesses, admissions, or internal reports contradicting public statements—or that any statement was false, his core operations theory fails. *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 424 (S.D.N.Y. 2020); Mot. at 31-34.[30]

Finally, Plaintiff says EHang's accounts receivable must have been "fabricated revenues" simply because they were "longstanding" and "growing." (Opp. at 31.) But this is more

---

[26] For the same reasons, Plaintiff's argument (Opp. at 29) that Defendants had access to "flight approvals" falls short. *Novak v. Kasaks*, 216 F.3d 300, 308-09 (2d Cir. 2000); *supra* III.D.2. And Plaintiff does not argue that scienter can be inferred merely from Defendants' positions or their alleged access to information. (*See* Mot. at 31-32.)

[27] Plaintiff attempts to equate the immaterial translation differences in the title of the press releases here to the "sharply different financial figures" in other cases.  (Opp. at 29 n.20 (citing *Lewy v. SkyPeople Fruit Juice, Inc.*, 2012 WL 3957916, at *4 (S.D.N.Y. Sept. 10, 2012) (reporting "sharply lower revenues, net income, cash, and assets" in SEC filings)*; In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *3 (S.D.N.Y. Jan. 27, 2014) (finding "discrepancies in revenues reported to the SEC")).) This apples to oranges comparison fails—objectively false financial statements do not equate to subjective translation quibbles with the ***titles*** of press releases.

[28] Both allegations are undermined by the fact that the CAAC announced on its website that it had formally adopted the Special Conditions for EH216-S AAV Type Certification. (Mot. at n.8.)

[29] *Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) (explaining that the Second Circuit has "not yet expressly addressed whether, and in what form, the 'core operations' doctrine survive[d] [the PSLRA]").

[30] Plaintiff relies on a line of cases for the proposition that allegations about empty facilities establish scienter. (Opp. at 30-31.) But in those cases, the defendants reported grossly inflated revenue figures while their factories and/or workforce were essentially doing nothing. *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 115, 117 (S.D.N.Y. 2013) (revenue overstated by 464% while employees were playing cards and sleeping); *Dean v. China Agritech, Inc.*, 2011 WL 5148598, at *3-*4 (C.D. Cal. Oct. 27, 2011) (revenues inflated by "1,444% and 900%" while factories "sat idle"); *In re China Educ. All., Inc. Sec. Litig.*, 2011 WL 4978483, at *1, *6 (C.D. Cal. Oct. 11, 2011) (revenue "exponential[ly]" overstated and facility was "an empty building" that company did not own). Here, there are no particularized facts showing that EHang's revenues were overstated or that its facilities were non-functioning. (*Supra* at III.B, III.D.3-5; Mot. at 22-24.)

speculation. Nothing in the AC shows that the receivables were "uncollectible," much less that Defendants knew it. *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 325 (S.D.N.Y. 2001). EHang disclosed its receivables during the Class Period and warned investors they would be high. (Mot. at 33-34; Opp. at 31 (conceding this).) The more compelling inference is that EHang could not collect some accounts receivables because of the pandemic, as it said. (Mot. at 33.) Indeed, EHang reported that it subsequently collected $11.5 million. (Mot. at 34.)

## V.   PLAINTIFF HAS NOT PLEADED LOSS CAUSATION.

Defendants do not argue that a short-seller report can never be a corrective disclosure. (Opp. at 34-35 (citing *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012).) Rather, the **Report** is not a corrective disclosure because it did not "reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010); *supra* at III.D; Mot. at 35. On its face, the Report is a compilation of the financially-motivated author's "opinions" and biased spin on cherry-picked "public sources." (Ex. 37 at 32-33); *see e.g.*, *Ideanomics*, 2022 WL 784812, at *11; *Zhong Zheng v. Pingtan Marine Enter.*, 379 F. Supp. 3d 164, 178-79 (E.D.N.Y. 2019), *Fila v. Pingtan Marine Enter.*, 195 F. Supp. 3d 489, 497 (S.D.N.Y. 2016). And, like *In re Nektar Therapeutics Securities Litigation*, investors would have taken the Report's contents with a "healthy grain of salt" because Wolfpack Research disclaimed the "accuracy" and "completeness" of the Report and admitted that its reporting was financially motivated (Ex. 37 at 32-33). 34 F.4th 828, 840 (9th Cir. 2022). Under these circumstances, loss causation is not adequately pleaded.[31] (*See* Mot. at 34-35.)

**CONCLUSION**

For these reasons, EHang respectfully requests that the Court dismiss the AC.

---

[31] *Cf. Lewy*, 2012 WL 3957916 at *13-14 (short-seller report accompanied by attorney affidavits swearing that cited filings were obtained directly from China's State Administration for Industry and Commerce and corroborated by independent third party as well as plaintiff); *Longwei*, 2014 WL 285103, at *2-4 (corroboration by Chinese media reports); *Lea v. TAL Educ. Grp.*, 2019 WL 4688691, at *1-*2 (S.D.N.Y. Sept. 25, 2019) (corroboration by Chinese securities filings and bolstered by interviews with insiders at company), *rev'd and remanded*, 837 F. App'x 20 (2d Cir. 2020); *Bond v. Clover Health Investments, Corp.*, 2022 WL 602432 at *18 (M.D. Tenn. February 28, 2022) (short seller report revealed that defendants were subject of undisclosed DOJ investigation and was corroborated by the plaintiffs' confidential witnesses and defendants' admissions); *Ho* 887 F. Supp. 2d at 569 569 (court did not address whether the report qualified as a corrective disclosure).

Dated:   September 7, 2022

Respectfully submitted,

By: */s/ Sarah M. Lightdale*

COOLEY LLP
Sarah M. Lightdale
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
slightdale@cooley.com

Koji F. Fukumura (*pro hac vice*)
Linh K. Nguyen (*pro hac vice*)
Matthew D. Martinez (*pro hac vice*)
4401 Eastgate Mall
San Diego, CA 92121
Tel: (858) 550-6000
kfukumura@cooley.com
lknguyen@cooley.com
mmartinez@cooley.com

Zachary D. Williams (*pro hac vice forthcoming*)
1144 15th Street Suite 2300
Denver, CO 80202
Tel: (720) 566-4000
zwilliams@cooley.com

*Attorneys for Defendants EHang Holdings, Ltd., Huazhi Hu, Richard Jian Liu, Edward Huaxiang Xu, and Derrick Yifang Xiong*

-16-